Bernard H. Sokol, Plaintiff-Appellee, v. Bernard Mortimer, Defendant-Appellant.

Gen. No. M–51,045.

First District, Second Division.

March 14, 1967.

Harry G. Fins, of Chicago, for appellant.

George C. Rabens, of Chicago, for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

57

This is an appeal from a judgment entered on a jury verdict in favor of the plaintiff, Bernard H. Sokol and against the defendant, Bernard Mortimer, for $5,000, for an attorney's fee.

Plaintiff, Bernard H. Sokol, is an attorney at law licensed to practice in Illinois and the United States District Court and had specialized in the defense of federal tax litigation for approximately seventeen years. Defendant, Bernard Mortimer, was a medical doctor specializing in gynecology.

In April of 1963, the plaintiff was called to defend a case involving an alleged failure by the defendant to report certain income on his federal tax returns over a period of years. Pursuant to conversations had between the two parties, the plaintiff's specific attention was directed by defendant to an alleged irregular practice by certain nurses in his employ, during the period in question. The alleged irregularity concerned the nurses' failure to post receipt of patients' fee payments on the patients' respective records maintained in the doctor's office. As a consequence, plaintiff contends he focused his investigation and defense of the defendant on a thorough audit of these records and the corresponding bank deposits relating to them. The fulcrum of the investigation was to account for certain unreported income of the defendant, and attribute such to the misconduct of the nurses.

Prior to October of 1963, plaintiff was employed by defendant in this case with a retainer of $1,500, pursuant to an oral agreement between them. In October of 1963, plaintiff proposed to defendant that they enter into a written agreement for the payment of attorney's fees in the sum of $10,000, half of which, ($5,000), was to be a bonus, contingent upon the defendant's discharge or acquittal, and pursuant to which plaintiff agreed to undertake the investigation. This agreed upon sum included the previous $1,500 retainer. The proposal was submitted

to defendant in the form of a written letter of advice dated October 10, 1963, and was signed by both parties. Thereafter, plaintiff continued his investigation and preparation of the case.

In December of 1963, defendant was indicted for income tax evasion. Plaintiff continued to pursue the procurement of information and affidavits relating to the nurses' posting procedures. In March of 1964, two weeks before the defendant's trial, plaintiff was notified by the federal prosecutor that his office had procured 158 money orders of defendant's totaling some $152,000, which had been purchased by the doctor with over a thousand of his patients' checks, none of which had been deposited in his bank account so as to evidence income. Plaintiff contends that this revelation necessitated an entirely new theory of investigation for the proper preparation of the defendant's defense, the substance of the investigation having theretofore been devoted to the misconduct of the nurses and not that of his client.

Subsequently, the two parties conferred in regard to this new development. Plaintiff sharply criticized his client for having concealed such vital information from him, maintaining that the importance of his prior investigative efforts of several months had thus been minimized or wasted. The doctor denied having wilfully concealed the information, asserting that he had every right to assume that the checks in question had been properly posted before negotiating them for the money orders. John F. Kelly, who had assisted plaintiff in his preparation of the case, testifying for plaintiff, stated that he was of the opinion at that time the money orders were not material to the government's proof of the doctor's income.

The resulting commencement of an entire new series of investigations caused plaintiff to submit, in a writing dated March 17, 1964, six days before the trial, that the contingent portion of their prior fee agreement should be

59

voided, and that the attorney's fees totaling $10,000 be paid to him regardless of the final determination of the tax evasion trial. This alteration in the fee agreement was agreed to by defendant, in writing. Whether defendant agreed to the change without protest is a fact in much dispute.

Defendant was tried for income tax evasion and convicted. An unsuccessful appeal was taken by counsel other than plaintiff. United States v. Mortimer, 343 F2d 500, 65–1 USTC ¶ 9301 (1965). After repeated demands, defendant refused to pay plaintiff the $5,000 balance of his fee. The plaintiff instituted this action and judgment was entered on a verdict in favor of plaintiff for $5,000. Defendant filed motions for a judgment notwithstanding the verdict and for a new trial, both of which were denied and from which defendant appeals.

■ It is defendant's theory: (1) that such attorney-client fee agreements are presumptively fraudulent, thereby making it incumbent upon the attorney to sustain the burden of proof as to the agreement's validity, (2) that the trial court erroneously instructed the jury as to such burden of proof, (3) that the trial court erred in refusing the defendant's instructions relating to a presumption of the honesty and the credibility of defendant, (4) that the trial court prejudiced defendant's case by insulting his wife while she testified, (5) that the court below erred in admitting, over objection, certain confidential communications between the attorney and his client, (6) that plaintiff, having violated Canon 37 of the Canons of Professional Ethics, is not entitled to compensation, (7) that the judgment is not supported by the allegations and proofs, and (8) that the verdict is contrary to the manifest weight of the evidence.

Plaintiff responds: (1) that attorney-client fee agreements are not presumptively fraudulent, and thus the jury instruction on burden of proof was proper, (2) that the rule prohibiting testimony as to confidential

communications is inapplicable to the facts of this case, (3) that the court did not err in refusing defendant's tendered instructions on honesty and credibility, (4) that no prejudice was created by the court in reprimanding defendant's wife while on the stand, and (5) that the verdict and judgment are consistent with and supported by the allegations and evidence.

Defendant maintains that attorney-client fee arrangements, due to the fiduciary capacity in which the attorney negotiates, are presumptively fraudulent, making it thereby incumbent upon such attorney to sustain the burden of proof as to his utmost good faith and freedom from the exercise of undue influence during such negotiations. He further alleges that it was thus error for the court below, by way of instructions to the jury, to cast the burden of proof as to matters of consideration, undue influence and the like, upon him. In this conjunction, defendant relies principally upon the cases of Elmore v. Johnson, 143 Ill 513, 32 NE 413 (1892); Miller v. Lloyd, 181 Ill App 230 (1913); Woods v. First Nat. Bank of Chicago, 314 Ill App 340, 41 NE2d 235 (1942); Jordan v. Ray Schools-Chicago, Inc., 49 Ill App2d 1, 199 NE2d 827 (1964) and Awotin v. Abrams, 321 Ill App 304, 52 NE2d 827 (1944).

This court takes full cognizance of the holdings and reasoning of these cases, but after careful examination, can find no underlying rule which establishes that attorney-client fee agreements create a presumption of fraud per se. No such rule obtains from this line of cases because: (1) such a rule would necessarily exculpate a client from dealing in an open and above board fashion with his attorney and impose upon such attorney an unwarranted and inequitable burden, and (2) the cases relied upon for imposition of such a rule are readily distinguishable from the facts of the instant case.

As the court in Comerford v. Loewenbein, 227 Ill App 321 (1923) said:

61

> The general rule above referred to has usually been applied in connection with proceedings in equity brought by a client, involving some transaction between him and his attorney, having to do with the client's property or property rights or some interest in the subject matter of the litigation in connection with which the attorney was retained.
>
> The case of Elmore v. Johnson, 143 Ill 513, 32 NE 413, is that sort of a case. . . .

The Miller case is equally not in point. There the court held that a subsequent agreement secured by the attorney increasing his compensation from that which had been theretofore agreed upon was invalid and unenforceable. The court, however, was very clear in pointing out that the attempted change occurred after practically all the work had been performed pursuant to the prior agreement. Such a situation does not appear in the instant case.

The Woods case is inappropriate because there the action for fees was based purely upon an account stated. The Awotin case, where the attorney sought additional fees due to unforeseen difficulties, is equally unpersuasive for there the court specifically ruled that the attorney had contemplated to see the case through irrespective of subsequent developments. Again, such are not the facts as presented before this court. Moreover, not one of the aforementioned cases relied upon by the defendant involve a situation in which the propriety of the conduct of the client, as well as that of the attorney, is at issue and is treated in relation to its effect upon the presumptive fraud theory of the case.

██ This is not to say, of course, that this court ignores the existence of the fiduciary relationship between the parties and seeks to exonerate the attorney of a duty of professional responsibility and good faith toward his client. Rather, the fairness of the conduct

of the attorney in negotiating for his fee, coupled with the circumstances surrounding the amending of the agreement itself, are clearly questions of fact and not law in each specific case. It cannot be said that a presumption of invalidity permeates the negotiation of every attorney-client fee arrangement.

■ This basic tenet was clearly recognized by this State's highest court in Rolfe v. Rich, 149 Ill 436, 35 NE 352 (1893), where the court said:

> While the law is, that dealings between attorney and client, resulting in advantage to the former, will be closely scrutinized, and the attorney be required to show the most good faith and fairness, and that the client dealt with full knowledge of his rights, it does not prohibit all dealings between them, or declare all contracts made by the attorney with the client ipso facto void, or voidable at the instance of the client.

Similarly, in Morrison v. Smith, 130 Ill 304, 23 NE 241 (1889), the court reasoned:

> . . . , and though transactions between them (attorney and client) will be closely scrutinized, yet those which are obviously fair and just will be upheld. (Insert supplied.)

■ It necessarily follows that the court did not err in refusing defendant's tendered instructions on burden of proof. We do not think that any greater duty devolves upon an attorney seeking collection of his fees once he has established, by going forward with the evidence, the fairness and reasonableness of that fee under the attendant circumstances. The burden of proof to establish fraud, undue influence, or lack of consideration, not unlike any other affirmative defense, must necessarily rest upon the party asserting it. Ward v. Yancey, 78 Ill

App 368 (1898), Comerford v. Loewenbein, 227 Ill App 321 (1923). The liability to pay for legal services stands upon the same footing as other agreements. Klein v. Chicago Title & Trust Co., 295 Ill App 208, 14 NE2d 852 (1938). In actions by attorneys to recover compensation for professional services performed under an alleged contract, the usual rules as to defenses in actions ex contractu apply. Caplow v. Hershon, 331 Ill App 267, 72 NE2d 868 (1947).

■ Defendant also contends that he was a victim of what his counsel terms "automatic duress," in that he had no choice but to submit to the plaintiff's demands. We believe this to be without merit, for nothing appears of record, which could have precluded him from discharging his counsel and instituting a breach of contract action against plaintiff.

■■ The propriety of defendant's own conduct was unquestionably at issue, raising a proper question of fact for the jury to weigh. It is not the province of this court to substitute its judgment for that of a jury in absence of patent error wherein the weight of the evidence demands a contrary conclusion. Niman v. Pecatonica Livestock Exchange Inc., 13 Ill App2d 144, 141 NE2d 327 (1957). Viewed from this proper perspective, it cannot be said that the jury was manifestly in error in agreeing that defendant had not sustained his burden of proof.

■ The tendered instructions of defendant relative to the presumption of honesty and the credibility of the defendant were properly refused. Both instructions singled out defendant, casting upon him favorable inferences by omitting similar reference to plaintiff, and as such, if accepted, would have been prejudicial to plaintiff.

■■ While a prior conviction for federal income tax evasion cannot be said to be a conviction of an infamous crime within the meaning of our rules of evidence, this court is of the opinion that no error was committed by the lower court in allowing plaintiff to make mention

of such conviction in his closing argument. The statement was in response to defendant's argument that the $152,000 in money orders was not material to the government's proof of defendant's income. The reference, when examined in context, indicates that it would not tend to impeach or discredit defendant as he so maintains. This is substantiated by the fact that plaintiff made no attempt to introduce the record of the prior conviction into evidence.

██ ██ Defendant further contends that the court erred in permitting plaintiff, an attorney, to testify to certain privileged and confidential communications between himself and defendant, his former client. This contention is equally without merit, for an exception to the general rule, which prohibits disclosure by the attorney of confidential communications of his client, is recognized, where such a disclosure becomes necessary for the protection and preservation of the attorney's own rights inter se. Horowitz v. LeLacheure, 81 RI 235, 101 A2d 483 (1953). This exception has commonplace application in Illinois to cases involving actions for attorney's fees based upon a quantum meruit, as a matter of fairness. It has been equally applied to offers of testimony of an attorney relating to the construction of provisions of the contract he had negotiated with his client. Funk v. Mohr, 185 Ill 395, 57 NE2d (1900).

To reach a contrary conclusion would be to permit an attorney to be charged with conduct fatal to his cause of action, yet render him incompetent to answer in response to the attack upon his professional integrity. Moreover, all the matters involving the testimony of plaintiff which made reference to the nurses' posting procedures and the money orders had already been made a matter of public record as a result of defendant's tax evasion trial, thereby removing the shroud of secrecy placed over it. For this court to bar such testimony of the attorney as violative of a confidence reposed in him

by his client, as to these matters, would be useless and meaningless.

Plaintiff has not violated Canon 37 of the Canons of Professional Ethics as defendant maintains.

The court's comment to defendant's wife while on the witness stand in his behalf, ". . . eradicate that smirk from your face, madam," was not sufficient, in and of itself, to sustain a charge of prejudice warranting reversal. The record reveals that the witness' conduct clearly evidences a contumacious attitude. Rejecting the authority of the court, she displayed a manifest absence of respect for the judicial proceeding to the extent that the witness was even admonished by defendant's counsel, who called her to the stand. Having acted with proper justification, yet without expressing a judicial opinion as to her credibility or the weight to be afforded her testimony, the court clearly acted within the realm of sound discretion and the powers available to it. Reeds v. Sands, 11 Ill App2d 355, 137 NE2d 553 (1956); Schaffner v. The C. F. Massey Co., 270 Ill 207, 110 NE 381 (1915). Cf. People v. DeStefano, 64 Ill App2d 368, 212 NE2d 368 (1965).

A review of the record of the proceedings below clearly indicates that the verdict is supported by and is consistent with the pleadings and the proofs. The verdict and judgment thereon are not contrary to the manifest weight of the evidence and hence will not be disturbed.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BURKE and BRYANT, JJ., concur.