ROSALIE A. DRAKE, Plaintiff-Appellee, *v.* JOSEPH H. BECKER, Defendant-Appellant.

(No. 56525;

First District (3rd Division)—September 20, 1973.

*Rehearing denied November 15, 1973.*

Harry G. Fins and Gary Dienstag, both of Chicago, for appellant.

Edward W. Barrett, of Crowley, Barrett and Karaba, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

This litigation arises from a dispute between an attorney and his client over his fee. The attorney, Joseph H. Becker, appeals from a judgment ordering him to repay the client, Rosalie Drake, $30,000 with interest and costs.

In August 1962 Mrs. Drake consulted Becker about her matrimonial difficulties with her husband, Keith Drake. Becker agreed to represent her and a discussion was had about his fee. According to the subsequent testimony of Mrs. Drake, Becker said that if a fee had to be paid, her husband, not she, would be obliged to pay it. Becker testified he told Mrs. Drake that setting a fee was discretionary with the court and that in addition to whatever the court might allow she would have to pay

him a substantial fee. Shortly thereafter Becker filed in. Cook County a complaint for separate maintenance which prayed that Keith Drake be compelled to pay her attorney's fee in full.

In the fall of 1963, negotiations were begun with the attorneys representing Drake concerning a division of the assets owned by the parties. In November 1963, as a basis for the negotiations Becker prepared suggestions regarding a possible settlement. One of the suggestions was for the creation of a trust from which Mrs. Drake would receive the income and another was that the attorney fees for both parties, to be agreed upon by them, would be paid out of the trust property.

The settlement negotiations were initially unsuccessful and were broken off. They subsequently resumed and amicably concluded in 1964. The resulting agreement, which Mrs. Drake signed on November 27, 1964, provided that the attorneys' fees for her and her husband were to be paid out of the principal of the trust. This provision was incorporated into Article 1 of the trust, with the added stipulation that if the parties were unable to agree upon the amount of the fees, the court would determine them. The agreement also stated that it was contemplated that Mrs. Drake would amend her separate maintenance complaint to one for divorce. Becker filed the divorce action in Lake County, Illinois, and a decree was entered on January 21, 1965.

In the meantime, no agreement could be reached on attorneys' fees and, pursuant to the understanding of November 1964, the problem was submitted to the Circuit Court of Cook County which had jurisdiction of the still pending separate maintenance suit. Becker requested $60,000 for 200 hours of work already done and approximately 150 hours of anticipated work by him and associate counsel. Drake's attorneys objected and said a fair fee would be $30,000. Drake himself suggested $10,000. After a full discussion the court stated: "I have considered it very carefully and the total allowances determined by this Court will be the sum of $40,000. You may draw up an order, Mr. Becker."

The order, entered on December 22, 1964, stated:

> "Plaintiff's attorneys have performed valuable services for her extending over a period of approximately two years in connection with filing and prosecuting this case and negotiating the terms of the above described agreement and trust agreement; and will perform additional valuable services for the Plaintiff in connection with consummating the above described agreement. The reasonable value of all of such services is the sum of Forty Thousand Dollars ($40,000)."

Becker did not move to vacate the order and did not appeal but, according to Mrs. Drake, he complained to her that the court's allowance

of fees was inadequate and he demanded $30,000 more. Although she reminded him that he had assured her she would not be liable for any fee, he insisted upon receiving $30,000 from her and said this was what he wanted and she better have it or there would be no further action in her divorce case. Under this threat she reluctantly brought a check with her to the divorce hearing on January 7, 1965, and gave it to him in the hallway of the Lake County courthouse. Becker testified that he and his client had many conversations in reference to her paying him $30,000, both before and after the court determined his fee, that she was aware of her obligation to pay him a substantial fee from the outset of their relationship, that she never protested but rather payed him willingly and thought $70,000 was a reasonable fee.

Three years later Mrs. Drake, without prior demand, instituted this action against Becker seeking the return of the $30,000. She charged that the fee was not supported by consideration, that the defendant was guilty of over-reaching and that he breached the fiduciary relationship between attorney and client. After hearing the testimony of both parties and two other witnesses and examining ten exhibits, the trial court determined that Becker's insistence upon the additional compensation was unconscionable.

On appeal Becker contends that the agreement to pay him $30,000 was valid and enforceable, and that it was not the result of over-reaching or undue influence on his part. He declares that his client's testimony to the contrary is unworthy of belief.

There is a flat contradiction between Becker's and Mrs. Drake's versions of the fee discussion at their first meeting in 1962. Becker said she was fully informed that she personally would have to pay him a fee. She stated that he did not tell her this and that she came away from the meeting with the belief that she would not be accountable for any of his fee. This contradictory testimony raised a question of credibility which was for the trier of fact to resolve. In this connection one of the exhibits before the court was a memorandum prepared by Becker during their conversation. There was no mention of fees in the memorandum.

Becker's principal reliance, however, is not on the conversation at their first meeting but on a document signed by Mrs. Drake in November 1963, nearly 15 months afterwards. The document, drawn by Becker, was titled: "SUGGESTIONS RE PROPERTY SETTLEMENT BETWEEN KEITH DRAKE AND ROSALIE DRAKE, ASSUMING A DIVORCE IS GRANTED." At Becker's request Mrs. Drake signed the document on its last page and placed her initials and the letters "O.K." on the two preceding pages. Near the beginning of the document there was a provision which stated that the attorney fees for both parties

would be paid out of a trust which was to be created as a part of the settlement. The paragraph which Becker claims binds his client was on the last page immediately above her signature. It provided that in addition to the fees to be agreed upon by the parties, she would pay her attorney $30,000 from her personal funds.

Mrs. Drake affixed her signature to the document on November 8th, the day it was first presented to her in Becker's office. She testified she signed it at his request so that he could submit it to Keith Drake's attorneys as the basis of a settlement. She recalled that Becker told her the fees were to be paid out of a trust. Although she scanned the suggestions, she did not remember reading the paragraph which stated that she would pay him $30,000.

■■ The title of the document gave no indication that the document contained anything more than settlement proposals to be negotiated with the opposing attorneys. The title said nothing about a contract between Becker and Mrs. Drake and, with the exception of one paragraph, all its contents pertained to the settlement. When an attorney contracts with his client he bears the burden of showing the utmost good faith and complete disclosure on his part, and the full understanding of all the facts and their legal consequences on the client's part, as well as the demonstrable fairness of the agreement reached. (*Bounougias v. Peters* (1964), 49 Ill.App.2d 138, 198 N.E.2d 142.) Although Becker's testimony conflicted with his client's concerning the thoroughness with which the document was examined by her and explained to her, and although the contractual paragraph was not concealed within the document, the title of the document was so misleading and its settlement items so pervasive that Mrs. Drake could well have been unaware of the insertion of the contractual feature at the time she signed the document.

Under these circumstances her signature lost much of its probative value, and the signed document was the only evidence Becker presented to corroborate his testimony that there was a private fee agreement between his client and himself. On the other hand, provisions in certain documents and to some extent in the pleadings seen by Mrs. Drake could have conveyed the impression that Becker would be compensated by her husband or by the trust. The complaint for separate maintenance sought to place the burden of fees solely on Keith Drake; the settlement agreement stated that all attorneys' fees were to be paid from the trust; the trust instrument itself stated that attorney fees were to be paid out of the principal of the trust and if the parties could not agree they would be set by the court. There was no provision in the agreement or the trust stating that the trust would pay only a portion of the fees of Mrs. Drake's attorney.

The judge who set Becker's fee at $40,000 said that this sum was the total allowance for his services. Becker was displeased and asked permission to address the court. He then said:

"Now, if the court pleases, an agreement was made as an agreement and I have agreed to have the court determine the rate of the fees, there is no question about that, but I am terribly disappointed. I think that the court did everything in the court's power, I think the court tried to be fair to me, I think the court tried to be fair to everybody concerned. There is nothing I can do about it, that is the fee of $40,000.00, but I have to be honest with the court. As far as Mrs. Drake and I are concerned, I have rendered services for Mrs. Drake other than her litigation between herself and her husband and Mrs. Drake has agreed that I have, and we will have to adjust those fees with her. I have to be honest with the court and tell the court that."

Becker did not inform the court that he had a separate agreement with Mrs. Drake as to fees nor did he disclose his intention of seeking more money from her in the divorce case. What he said was that he had rendered services for her *other than in the litigation between herself and her husband* and as to those services the fees would have to be adjusted. When the court determined that Becker's fee would be $40,000 it believed that it was setting his total fee. We cannot estimate what compensation the court would have awarded him had it been made aware that he expected additional remuneration from Mrs. Drake. We presume, however, since the court thought his total services were worth $40,000, it would have reduced the $40,000 by the amount he anticipated receiving from her. In fairness to the court he should have revealed that he expected to receive a further fee. And as the amount of the court's award directly affected the size of the trust from which his client was to receive the income, Becker was obligated, in fairness to the court and in his client's interest, to frankly inform the court of his intention to exact an additional fee from her and the amount of that fee. His allusion to other confidential matters for which his client would compensate him in no way remedied his lack of complete candor.

To establish the propriety of a total fee $70,000 [$200 an hour if the estimate he made to the court of 200 past and 150 future hours of work is accepted] the defendant emphasizes his long experience in the field of matrimonial law, the complex nature of the case and the favorable settlement which he negotiated. He points out that he secured for Mrs. Drake, an experienced business woman of independent means, the income from a $970,000 trust for life or until her remarriage, as well as the title to five parcels of real estate. However, the judge who allocated

the $40,000 fee knew the size of the trust, the work Becker had done and his accomplishments at the time he determined what the fee should be. It was stipulated that Mrs. Drake's personal assets were not to be considered in determining the amount of the fee. The judge correctly observed: "A client's ability to pay cannot justify a charge in excess of the value of the service." It is interesting to note that Becker testified at this hearing that, "about the Fall of 1963 I agreed to accept $30,000 for my fees if the matter was an uncontested matter. This was to be a total fee if it was settled at that time." This remark pertained to his negotiations with Keith Drake's attorneys. It appears that the settlement contemplated in November 1963 was practically the same as the one concluded in November 1964. It was achieved a year later after a considerable interval in the negotiations, and the case was disposed of as an uncontested matter.

It was not the province of the judge who presided over the present case to decide the amount of Becker's fee. That question had been resolved; the order fixing his fee at $40,000 was final and was in full payment for his services in the divorce case. Becker himself testified, "The fee I was asking the judge to allow me was the entire fee that I would be entitled to for services rendered by me and my associates as well as services to be rendered in consummation of the divorce." The issue before the trial judge was the propriety of the attorney's demand for an additional fee and whether it should be returned to his client. Nevertheless, the court was aware of the size of the estate and the work Becker had performed for Mrs. Drake and it considered his 47 years of experience and his acknowledged expertise in the field of marital difficulties when it arrived at the decision that Becker's demand for $30,000 from his client was unconscionable.

■■■ It is incumbent upon an attorney to exercise the utmost good faith and fairness in dealing with his client. (*Morrison v. Smith* (1889), 130 Ill. 304; *Goranson v. Solomonson* (1940), 304 Ill.App. 80, 25 N.E.2d 930.) A fiduciary relationship exists as a matter of law between an attorney and client (*Turner v. Black* (1960), 19 Ill.2d 296, 166 N.E.2d 588) and all transactions growing out of such a relationship are subject to the closest scrutiny. (*Gaffney v. Harmon* (1950), 405 Ill. 273, 90 N.E.2d 785.) A fee arrangement which is modified to an attorney's advantage during the relationship of attorney and client is presumptively fraudulent. (*Miller v. Solomon* (1964), 49 Ill.App.2d 156, 199 N.E.2d 660. But see *Sokol v. Mortimer* (1967), 81 Ill.App.2d 55, 225 N.E.2d 496.) The burden is on the attorney to affirmatively prove that the modification was made with unquestionable good faith, fairness, adequacy of consideration and freedom from undue influence. The trial court's con-

clusion that Becker did not sustain his burden of proof was not against the manifest weight of the evidence and will not be set aside.

The defendant's further argument that Mrs. Drake should be barred from recovering as she had the opportunity to terminate their relationship and secure other counsel in the pending divorce case before she paid the $30,000 fee, is of little merit. He sought the extra payment from her after the fee he was to receive was set at $40,000. For him thereafter to burden his client as the litigation was reaching a climax with the choice of paying an extra fee, terminating their relationship or foregoing her divorce was to take improper advantage of the client's position. A lawyer should always bear in mind that the legal profession is concerned with the administration of justice and is not a mere money-getting trade. *In re Doss* (1938), 367 Ill. 570, 12 N.E.2d 659.

■■ By her payment Mrs. Drake did not concede the legitimacy of the Becker fee, nor did she do so by failing to bring her action until three years later. That he was prejudiced by her delay in initiating proceedings against him was neither pleaded nor proved.

We find no error in the court's assessment of interest and costs and the judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.