WENDELL DURR, Plaintiff-Appellee, v. WILLIAM (BERT) BEATTY *et al.*, Defendants (John M. Beatty, Defendant-Appellant).

Fifth District   No. 5—84—0464

Opinion filed April 8, 1986.

John W. Leskera, Russell K. Scott, and W. Michael Gnavi, Jr., all of Dunham, Boman & Leskera, of East St. Louis, for appellant.

William C. Evers, of Collinsville, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

On March 31, 1983, plaintiff, Wendell Durr, filed an amended complaint in the circuit court of Madison County against defendants, John M. Beatty and William Beatty, alleging that the parties had entered into an oral contract for attorney fees in November 1977 and that defendants were obligated to pay plaintiff a certain sum pursuant to the terms of such contract. On June 24, 1983, plaintiff filed a covenant not to sue. This covenant provided that defendant William Beatty would pay plaintiff $1,500 and that plaintiff would not pursue any claim against William Beatty for attorney fees arising from the alleged contract. Following a bench trial, the trial court entered a judgment on June 20, 1984, finding in favor of plaintiff and ordering defendant John Beatty to pay plaintiff attorney fees in the sum of $20,000, less the sum of $1,500 which William Beatty previously had paid to plaintiff.

Defendant, John Beatty, has perfected this appeal in which he maintains that the trial court erred in determining that plaintiff and defendant had entered into an oral contract for attorney fees in November 1977. Alternatively, defendant urges that if such a contract existed, it is unenforceable because it is unconscionable and contrary to the public policy as evinced in the Illinois Code of Professional Responsibility (87 Ill. 2d R. 1—101 et seq.). In addition, defendant asserts that plaintiff is guilty of a breach of his fiduciary duty by unduly influencing defendant to enter into such a contract.

The following evidence was introduced at the bench trial. Plaintiff, who was serving as an associate circuit judge of the third judicial circuit at the time of the trial, testified that he was first licensed to practice law in 1962. Prior to 1973, plaintiff and defendant, who were social acquaintances, had systematically "traded services," with plaintiff providing legal services for defendant, an Edwardsville dentist, and defendant providing dental services for plaintiff. Under this system, plaintiff and defendant would periodically compare the amounts of services which the other had provided and one would pay to the

other any outstanding balances due.

In the early portion of 1973, defendant approached plaintiff and requested that plaintiff represent defendant and his brother, William Beatty, in a legal dispute concerning the ownership of a Franklin County radio station. Plaintiff and defendant conducted a major portion of the negotiations concerning plaintiff's legal representation of the Beattys due to the prior social relationship between plaintiff and defendant and the fact that plaintiff and defendant worked in Edwardsville while William Beatty lived in Franklin County. In early 1973, plaintiff and the Beattys entered into a contingency fee agreement, which provided that plaintiff would represent them in the radio station litigation and that they would pay plaintiff one-third of anything recovered as a result of such litigation.

During 1973, William Alexander, an associate in plaintiff's law firm, commenced litigation regarding the radio station by filing a complaint in the circuit court of Franklin County. Plaintiff admitted that Mr. Alexander performed the bulk of the legal services relating to the radio station litigation. In 1974, Mr. Alexander left plaintiff's law firm and established a law practice in Franklin County. As a result, plaintiff, Mr. Alexander, and the Beattys agreed that, for purposes of convenience, Mr. Alexander would represent the Beattys in the radio station litigation. Subsequently, Mr. Alexander and his Franklin County law partner were either appointed or elected to public office and were unable to continue their representation of the Beattys.

In 1977 defendant again asked plaintiff to represent the Beattys in the Franklin County litigation and plaintiff agreed to serve as their counsel. Although the evidence indicates that plaintiff and the Beattys entered into a contingency fee agreement in June 1977, the record contains conflicting evidence as to the precise terms of this agreement. Plaintiff testified that the agreement provided that he was to receive one-third of anything obtained as a result of the litigation. However, the defendant testified that plaintiff was to receive one-third of any cash award plus 15% of any interest in the radio station which the Beattys might obtain as a result of the litigation.

In any event, plaintiff and Dennis Douglas, an attorney who shared office space in plaintiff's building, performed certain legal services on the Beattys' behalf during the approximate five-month period from June 1977 until November 1977. Plaintiff admitted that during this period Mr. Douglas performed most of the legal services relating to the radio station litigation. Plaintiff limited his activity to counseling and advising Mr. Douglas and discussing the radio station litiga-

tion with a Washington, D.C., attorney and a Franklin County attorney who represented the radio station litigation defendants.

In an early November 1977 telephone conversation, defendant discharged plaintiff from his position as the Beattys' counsel in the radio station litigation. The record contains conflicting evidence as to the events surrounding this discharge and the subsequent oral fee agreement which allegedly was entered into by plaintiff and defendant.

Plaintiff testified as follows concerning the November 1977 telephone conversation. During that conversation, defendant informed plaintiff that, for convenience purposes, the Beattys again wanted a Franklin County attorney to represent them in the radio station litigation. Plaintiff, who believed that it was "very unlikely" that the Beattys would be "successful" in the radio station litigation, was "happy" to terminate his representation of the Beattys. When defendant inquired as to the amount of attorney fees which the Beattys owed, plaintiff responded that (1) the total amount of attorney fees awarded in the radio station litigation probably would be equal to one-third of everything recovered as a result of that litigation, and (2) as a referring attorney, plaintiff typically would receive one-third of the total attorney fees award. In other words, plaintiff informed defendant that a normal fee for a referring attorney was equal to approximately 11 percent of anything recovered as a result of the litigation. According to plaintiff, plaintiff and defendant orally agreed that plaintiff would relinquish control of the radio station litigation file in exchange for 10% of anything the Beattys received as a result of the radio station litigation. Plaintiff admitted that all of the discussions involving his discharge from employment and the oral agreement for attorney fees occurred in one telephone conversation.

Plaintiff also testified that he (1) had no discussion with Tad Armstrong, the attorney who subsequently was retained by the Beattys and who successfully concluded the radio station litigation, (2) assumed no responsibility for the radio station litigation file after November 1977, and (3) continued to perform legal services for defendant in other matters after November 1977.

Although plaintiff and defendant continued to engage in their practice of "trading" professional services after November 1977, the parties apparently did not again discuss this November 1977 fee agreement until August 1978. Plaintiff testified that in an August 1978 telephone conversation, defendant suggested that he pay plaintiff for the amount of time plaintiff had expended and the expenses plaintiff had incurred rather than a percentage of the amount recovered as a result of the radio station litigation. After considering

defendant's suggestion, plaintiff sent a letter dated August 15, 1978, to defendant, stating that "the more proper way to do it would be to leave it as we had already all agreed."

On December 14, 1981, the circuit court of Franklin County entered a lengthy judgment in the radio station litigation, providing, in part, that the Beattys would receive $120,000 in punitive damages and an ownership interest in the radio station. On April 23, 1982, the radio station litigation parties entered into a settlement agreement, providing that the Beattys would not receive a monetary award, but, instead, would be the sole owners of the radio station. Copies of both the circuit court's judgment and the parties' settlement agreement were introduced into evidence.

Plaintiff testified that (1) after reading a newspaper article which described this judgment, he sent defendant a document dated January 22, 1982, which provided in part that defendant owed plaintiff attorney fees resulting from the radio station litigation in the amount of $12,000 (*i.e.*, 10% of $120,000), and (2) after receiving this document, defendant informed plaintiff on January 25, 1982, that defendant could not recall entering into a November 1977 fee agreement with plaintiff.

Dennis Douglas, who was called as a witness by plaintiff, testified that in a telephone conversation held January 25, 1982, defendant informed him that plaintiff and defendant had entered into an oral agreement for attorney fees which provided that plaintiff would receive one-third of the total amount of the attorney fees awarded as a result of the radio station litigation.

Defendant testified that he discharged plaintiff during a November 1977 telephone conversation because "nothing was being done" in the radio station litigation. Defendant further testified that although he expected to pay plaintiff for the legal services performed during the period between June 1977 and November 1977, he was uncertain as to the manner in which such fees should be calculated. Defendant stated that he and plaintiff did not enter into any agreement for attorney fees following plaintiff's discharge in November 1977. In fact, defendant testified that he first became aware of plaintiff's claim for a percentage fee when he received the January 22, 1982, document. Defendant further testified that he and his brother paid Mr. Armstrong attorney fees in the amount of $38,000, which represented approximately 19% of the value of the radio station.

William Beatty, who was dismissed as a defendant in the case at bar as a result of a covenant not to sue which he entered into with plaintiff, testified that he did not enter into any fee agreement with

plaintiff concerning the radio station litigation.

Prior to trial, plaintiff and defendant had each filed claims for unpaid professional services resulting from their practice of "trading" such services. At the conclusion of the bench trial, the trial court entered a judgment on June 20, 1984, ordering plaintiff to pay the defendant the sum of $932.11, which represented the amount of unpaid dental services which had been provided by defendant. Neither party presents an argument on appeal concerning this portion of the trial court's judgment.

In the June 20, 1984, judgment, the trial court also determined that (1) in November 1977 plaintiff and the Beattys entered into an oral contract which provided that plaintiff would receive 10% of anything recovered as a result of the radio station litigation, (2) the Beattys successfully concluded the radio station litigation and received property valued at approximately $200,000, (3) plaintiff did not exercise undue influence in negotiating the November 1977 contract, and (4) this contract properly could be enforced. Accordingly, the trial court ordered defendant to pay plaintiff attorney fees in the amount of $20,000 less the sum of $1,500 which previously had been paid to plaintiff by William Beatty. Defendant has perfected this appeal.

■ We recognize the general rule that where an attorney employed to prosecute a case on a contingent fee basis is discharged, the attorney is entitled to recover on a *quantum meruit* theory the reasonable value of his services performed until the time of his discharge. (*In re Estate of Murphy* (1978), 56 Ill. App. 3d 1037, 1040, 372 N.E.2d 878, 881.) Under this rule, plaintiff, who was discharged by defendant in November 1977, would not be entitled to a percentage recovery, but would receive *quantum meruit* compensation for the reasonable value of the services which he performed during the period between June 1977 and November 1977. However, plaintiff urges that the general rule is not applicable to the case at bar because he is seeking to recover under the terms of a new contract entered into when he was discharged--rather than under the terms of the June 1977 contingent fee agreement. Specifically, plaintiff maintains that after defendant discharged him in November 1977, the parties negotiated another fee agreement which provided that plaintiff would receive 10% of anything recovered in the radio station litigation. Plaintiff submits that this contract is enforceable because the waiver of his right to immediate payment for legal services performed between June 1977 and November 1977 and the release of his common law retaining lien constituted sufficient consideration for this new fee agreement.

Defendant asserts that he and plaintiff did not enter into a oral fee contract in November 1977. Alternatively, assuming, *arguendo*, that such a fee contract exists, defendant submits that this contract is contrary to public policy and unconscionable. We need not address these issues because we conclude that a fiduciary relationship existed between plaintiff and defendant and plaintiff has failed to present sufficient evidence to rebut the presumption of undue influence which arises when an attorney enters into an agreement with his client during the existence of the fiduciary relationship.

■ It is axiomatic that a fiduciary relationship exists as a matter of law between an attorney and client and all transactions growing out of such a relationship, including contracts for payment, are subject to the closest scrutiny. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 709, 355 N.E.2d 86,88-89; *Drake v. Becker* (1973), 14 Ill. App. 3d 690, 696, 303 N.E.2d 212, 216.) The courts of Illinois have given particular attention to contracts made or changed after the relationship of attorney and client has been established. *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 522,417 N.E.2d 764, 768.

■ Plaintiff argues that the November 1977 fee contract is not subject to the close scrutiny required for transactions between fiduciaries because no attorney-client relationship existed between plaintiff and defendant when that contract was negotiated. Specifically, plaintiff contends that he and defendant entered into the new fee agreement after defendant discharged plaintiff and after the attorney-client relationship had been terminated.

After considering the record, we conclude that an attorney-client relationship existed between plaintiff and defendant when they entered into the November 1977 fee contract and that such contract "grew out" of this fiduciary relationship. In support of this conclusion, we note that plaintiff testified that he not only represented defendant in matters other than the radio station litigation prior to the November 1977 telephone conversation, but also continued to represent defendant in other matters after that conversation, In addition, plaintiff submits on appeal that the purpose of the November 1977 contract was to compensate plaintiff for services rendered during the period between June 1977 and November 1977 when he represented the Beattys in the radio station litigation.

Defendant argues that a contract which is entered into after the establishment of an attorney-client relationship is presumptively fraudulent and an attorney bears the burden of proving that such contract was made with unquestionable good faith, fairness, adequacy of consideration and freedom from undue influence. (*Drake v. Becker*

(1973), 14 Ill. App. 3d 690, 696, 303 N.E.2d 212,216; *Jordan v. Ray Schools-Chicago, Inc.* (1964), 49 Ill. App., 2d 1, 5, 199 N.E.2d 827, 829.) However, plaintiff asserts that in *Sokol v. Mortimer* (1967), 81 Ill. App. 2d 55, 63, 225 N.E.2d 496, 500, the court determined that contracts entered into during the existence of the attorney-client relationship are not presumptively fraudulent and the burden of proof to establish fraud, undue influence, or lack of consideration, not unlike any other affirmative defense, must necessarily rest upon the party asserting it.

The supreme court has recently resolved the apparent conflict in the cases cited by the parties by clarifying the rules regarding presumptions and burdens of proof in cases involving transactions between fiduciaries in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872. There, the supreme court recognized that a presumption of undue influence arises when an attorney enters into a transaction with his client during the existence of the fiduciary relationship. The court in *Franciscan Sisters* also determined that when an attorney presents sufficient evidence to rebut the presumption, the presumption vanishes and the party seeking to set aside the transaction has the burden of persuading the trier of fact that the transaction sought to be set aside was brought about by fraud or undue influence. The supreme court concluded that as a matter of public policy an attorney must provide "clear and convincing" evidence to rebut the presumption of undue influence once it has been raised. *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 464-65, 448 N.E.2d 872, 877-78.

Here, defendant did not expressly state to the trial court that he was relying on the theory of undue influence. However, we conclude that the evidence presented establishes the existence of a fiduciary relationship between plaintiff and defendant at the time they entered into the contract in November 1977; and defendant's repeated arguments concerning the unfairness of the contract were sufficient to raise a presumption of undue influence in this case. Accordingly, plaintiff was required to provide "clear and convincing" evidence to rebut this presumption of undue influence.

In order to rebut the presumption of undue influence relating to a particular transaction, an attorney must present evidence indicating that (1) the attorney made a full and fair disclosure to the client of all the material facts affecting the transaction, and (2) the transaction is fair. *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 709, 355 N.E.2d 86, 88-89; *Drake v. Becker* (1973), 14 Ill. App. 3d 690, 694, 303 N.E.2d 212, 214.

Here, plaintiff admitted that all of the discussions involving his discharge from employment and the oral fee agreement occurred in one November 1977 telephone conversation. In addition, there is no evidence that during this conversation plaintiff advised defendant of either the amount of time plaintiff had expended or the amount of expenses plaintiff had incurred representing the Beattys in the radio station litigation. Moreover, there is no evidence indicating that plaintiff advised defendant of alternative forms of payment (*e.g., quantum meruit* compensation), the current status of the radio station litigation, or the amount of legal work which would be required to successfully litigate the Beattys' ownership claim to the radio station.

Furthermore, when defendant inquired in August 1978 as to whether the form of payment could be changed, the plaintiff informed defendant that the "more proper way to do it would be to leave it as we had already all agreed." There is no indication in the record that plaintiff ever attempted to make the full and complete disclosure of alternative methods of payment which would have been necessary to allow defendant to make an independent, informed decision in this case.

As to the issue of whether the fee agreement in this case was fair, we note that the evidence indicates that the radio station litigation was pending for a period of approximately nine years. The instant case concerns the plaintiff's right to compensation for his representation of the Beattys during the approximate five-month period between June 1977 and November 1977. Although plaintiff testified that he did not maintain a record of the time he expended in the radio station litigation, he admitted that he limited his activity to consulting and advising Mr. Douglas and engaging in telephone conversations concerning the radio station litigation with attorneys in Washington, D.C., and Franklin County, Illinois. Plaintiff also conceded that (1) he could not recall whether he had entered an appearance on the Beattys' behalf or filed any pleadings in the radio station litigation, and (2) he assumed no responsibility for the radio station litigation file after November 1977. Tad Armstrong, the attorney who pursued the radio station litigation to a successful conclusion, testified that he worked approximately 600 hours on that case and received $38,000 in attorney fees from the Beattys. We conclude that the foregoing evidence does not constitute "clear and convincing" evidence that the November 1977 fee contract was fair.

In summary, we conclude that (1) a fiduciary relationship existed between plaintiff and the defendant in November 1977 when they allegedly entered into the oral fee agreement, and (2) even if the par-

ties agreed that plaintiff would receive 10% of anything recovered in the radio station litigation, that agreement is not enforceable because plaintiff failed to rebut the presumption of undue influence which arises in transactions involving fiduciaries.

■ We recognize that plaintiff performed certain legal services for the Beattys relating to the radio station litigation during the approximate five-month period between June 1977 and November 1977. In most circumstances, plaintiff, after his discharge, would have been entitled to a *quantum meruit* recovery for the value of such services. However, we are also aware of the general rule that a remedy based upon the affirmance of a contract is inconsistent with a remedy arising out of the same facts and based on a theory of disaffirmance; and the election of either remedy constitutes an abandonment of the other. See *Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506-08, 464 N.E.2d 292, 297-98.

■ Here, plaintiff could have disaffirmed the November 1977 contract and sought a *quantum meruit* recovery for the legal services which he performed between June 1977 and November 1977. However, plaintiff elected a remedy based upon the affirmance of the contract which the parties allegedly entered into in November 1977 and sought a percentage recovery from defendant. In addition, plaintiff objected to the introduction of any evidence concerning the *quantum meruit* value of the services which he provided. Accordingly, we conclude that plaintiff is not entitled to recovery in the instant cause based on the theory of *quantum meruit* because of his election to pursue an inconsistent remedy.

For the foregoing reasons, we reverse that portion of the judgment of the circuit court of Madison County which awarded attorney fees to plaintiff. Furthermore, we affirm that portion of the circuit court's judgment which ordered plaintiff to pay defendant a certain sum for unpaid dental services which defendant had provided to plaintiff.

Affirmed in part and reversed in part.

JONES and KARNS, JJ., concur.