JACOB HAISH

v.

GEORGE PAYSON.

*Filed at Ottawa May 10, 1883—Rehearing denied September Term, 1883.*

1.  EVIDENCE—*opinion on question of value of services.* In an action
by an attorney to recover for professional services for the defendant, such
services resulting in a favorable compromise of litigation, opinions of other
attorneys may be received as to the value of the services rendered; but
opinions as to the benefits of the compromise to the defendant in his busi-
ness in the future are not admissible.

2.  SAME—*elements that may be considered in fixing value of profes-.
sional services.* While the amount involved in the litigation may not im-
properly be considered in fixing the value of the services of an attorney in
the case which led to a settlement of the matters in dispute, and the securing
of certain rights and privileges to his client, yet it is not admissible to go into
an inquiry concerning prospective benefits which may accrue in the future to
the client from such settlement.

3.  SAME—*comparing result of litigation with other cases on question
of value of legal services.* In proving the value of legal services of an
attorney in the defence of a suit, and attending to other matters, leading to a
favorable settlement of the litigation, it is not proper to present to the view
of the jury the settlements made with other persons by those settling with
the client, either by direct evidence or by the form of a hypothetical ques-
tion to witnesses. It is not proper to show that the settlement with the
client was much more favorable than with other parties. Such comparisons
should not be permitted.

4.  SAME—*hypothetical question, as assuming facts.* If it be allowable
to assume facts in a hypothetical question to a witness, it is not permissible
to assume what is not within the range of legitimate evidence. Such a ques-
tion, filled with partial statements of facts, containing inferences and con-
clusions drawn from them, should not be allowed, and is well calculated to
mislead the jury.

5.  In this case a question covering some two and a half pages, containing
no appearance of hypothesis until near the close, was read to several wit-
nesses, in the presence of the jury, which was objected to, and it was held
an anomaly, and condemned as improperly allowed.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of
Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This was a suit brought in the Superior Court of Cook county, to recover for legal services rendered. The nature of the case appears sufficiently from the following question, which was propounded to witnesses on the trial:

Question—"This is a suit by George Payson, Esq., a member of the bar of this city, against Jacob Haish, of De Kalb, to recover fees for professional services. Haish had been sued some time about the end of 1876, in the United States Court, in Chicago, for the infringement of certain patents on barbed fence wire. Other parties being sued under the same patents formed an association for their mutual defence, and retained Mr. Payson, Mr. N. C. Gridley, and Messrs. Munday, Evarts & Adcock, as their counsel. Haish joined this union in 1879. The suits—fourteen in all—then went on together, and a very large amount of testimony was taken. They were all tried together before Judges Drummond and Blodgett, argued at great length, taken under advisement, and a decision rendered some seven months thereafter, finding three of the plaintiffs' patents valid, and all of the defendants guilty of infringement. A petition for rehearing was presented by the other defendants, but in this Haish did not join. He had received assurances from one of the plaintiffs' attorneys that he should not be in any way molested,—that he should pay nothing for the past, and have a free license for the future. He accordingly refused to apply for a rehearing. At the request of the plaintiffs' attorney he wrote him a letter, stating that he wanted no rehearing. He went in person to Judge Drummond and told him the same thing, and finally stood up in open court and publicly stated to the court that he was content with the decree then drawn, and was willing to have it entered against him. He also used his influence with the other defendants to settle, which they all finally did; but on his applying to the plaintiffs to carry out their agreement with him he was told that they had made no such promises, and that he could have no better terms than the rest.

This he refused to do, and soon after, in January, 1881, he retained Messrs. Munday, Evarts & Adcock to carry on the litigation for him alone, and he also retained Mr. Payson to act with them as counsel. The services here sued for commenced at this time. Mr. Haish had $300,000 invested in his business of making barbed wire, having one manufactory at De Kalb, Illinois, and another at Johnstown, Pennsylvania. These gentlemen accepted his retainer. They at once went to work to see if they could not get a rehearing, or if they failed in that, to prevent an injunction. The court did allow them to re-argue the case, and then held that only two of the plaintiffs' patents had been infringed by Haish. The next question was whether Haish should be enjoined. This question was also argued at length by eminent counsel for the plaintiffs, and Mr. Payson and Munday for Haish, and the court finally decided that no injunction should issue, provided he paid into court every month, to await the final result of the suit, seventy-five cents for every one hundred pounds, the same as had to be paid by the other licensees. The negotiations for a settlement, which had been previously broken off, were now renewed, Mr. Thurston, leading counsel for the patentees, going at once from the court room to Mr. Payson's office for that purpose, but still without success, the patentees not being willing to offer Mr. Haish such terms as he or his counsel were ready to accept. The next step taken by the patentees was to prosecute a suit against one of Mr. Haish's customers in the State of New York, whereupon a petition was prepared by Munday, Evarts & Adcock, and presented to Judge Drummond, for the purpose of preventing the patentees from going on with said suit. Judge Drummond intimated so clearly his opinion that Haish's customers should not be interfered with in that way, that nothing more was done in that suit, and negotiations were again resumed, after long and repeated consultations, Haish's counsel striving all the time to secure for him the most favor-

able terms, encouraging him to hold out, assuring him of final success in the Supreme Court if his proposition should be rejected by the other side, but at the same time urging him to settle whenever he could do so on proper terms. A settlement was at last effected,—a settlement whereby, it is claimed by Mr. Payson, that Haish secured the following advantages : First, he is released from all claims for past infringements, amounting, according to his own estimate, to $107,000 ; second, he is allowed to withdraw some $25,000 deposited by him in court; third, he received from the patentees $10,000 in cash; and fourth, he obtains a license under all their patents for fourteen years, the same as all their licensees, with the following important differences : Thus he obtains the right to make 10,000 tons of barbed wire for each year during the fourteen years, whereas the utmost they had been before willing to offer him was 4000 tons. On the first 4000 tons he pays no royalty, whereas on the terms first offered he would have had to pay seventy-five cents a hundred pounds, making a saving to him of $60,000 a year. On the next 4000 tons he pays only fifty cents a hundred, instead of seventy-five cents, making a further saving of $20,000 a year, or in all, $80,000 a year, or $1,-120,000 for the whole fourteen years, if the business continues so long, which he would have had to pay if he had got no better terms than those first offered,—all this being in addition to the regular profit made by him in common with all the rest, and which, at two cents a pound, would amount to $400,000 a year, thus leaving him in a better position than if the patents had been held invalid and the business thrown open. On this supposed state of facts, what, in your opinion, would be a fair and reasonable compensation for Mr. Payson's service to Mr. Haish, Messrs. Munday, Evarts and Adcock being associated with him and continually advising with him, and he taking part in the consultation, the negotiations, and the arguments in court?"

The court permitted the plaintiff's counsel, against the objection of the defendant, to read and propound the above question to five several attorneys who were called as witnesses. After opinions had been given under this question by the witnesses, varying from $15,000 to $30,000, these witnesses were recalled, and the question was amended by striking out the following language: "All this being in addition to the regular profits made by him in common with all the rest, and which, at two cents a pound, the present profits, would amount to $400,000 a year, thus leaving him in a better condition than if the patents had been held invalid and the business thrown open to all the world,"—and as thus amended the question was re-propounded to the witnesses, and their original valuation re-asserted.

Evidence was also given, against the objection of the defendant, tending to show that the terms of defendant's compromise were more favorable than those on which those other individuals who had been similarly prosecuted, settled, and also tending to show what special benefits resulted to the defendant, as stated in the question above, and with the same estimation thereof in figures at $1,120,000.

The jury, by their verdict, found for the plaintiff, and assessed his damages at $8000, for which the court, after overruling the defendant's motion for a new trial, gave judgment, which, on appeal to the Appellate Court for the First District, was affirmed, and the defendant appealed to this court.

Mr. FRANK J. SMITH, Mr. JOSEPH B. STEPHENS, and Mr. F. A. HELMER, for the appellant.

Mr. WILLIAM H. KING, and Mr. FREDERICK W. PACKARD, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The mode of presentation of this case to the jury was such as, in our opinion, to require a reversal of the judgment. The evidence which was permitted to be given, and the so-called hypothetical question which was allowed to be put and read over to witnesses, were calculated to draw away the minds of the jury from the true inquiry, what was the extent and value of the professional services rendered the defendant by the plaintiff, to the contemplation of the large sums of money which would result in the future from the saving of royalty, which in fourteen years would reach the enormous amount of $1,120,000,—suggestive of the idea, to the jury, that the plaintiff ought to be admitted to a participation of such magnificent gains. While the amount involved might not improperly be considered in fixing the value of the plaintiff's services, yet we consider it not admissible to go into an inquiry concerning prospective benefits which might accrue in the future. Testifying to the amount of the benefits which would be realized by the defendant in the future is not the statement of a fact, but the giving of an opinion. In the present case, opinions may be received as to the value of the services, but opinions as to benefits in the future are not admissible.

A citation is made of the rule, as laid down in *Eggleston* v. *Boardman*, 37 Mich. 18, that the professional skill and standing of the person employed, his experience, the nature of the controversy, both in regard to the amount involved and the character and nature of the questions raised in the case, as well as the result, should all be taken into consideration in fixing the value of the services rendered, and it is claimed that what was here done was justified under the above authority, as showing the result. The word "result," thus used, we understand to mean the termination of the controversy, whether successful or otherwise, and not the ultimate

benefit to the client. As remarked in *Robbins* v. *Harvey*, 5 Conn. 341, the inquiry under a *quantum meruit* is not what benefits, immediate and remote, have been derived from the services, but the question is, what is the general worth of the services rendered. The objection is not that the amount involved might not be taken into consideration, but the mischief of the course pursued was, that it was calculated to mislead the jury to think that the ultimate benefits to be derived by the defendant was the measure of compensation.

Another objection to the mode of the presentment of the case was in offering to the view of the jury the settlements which had been made with other persons. This was done by the evidence, and by the question objected to. The idea was held out to the jury that the settlement got by the defendant was a much more favorable one than those made by others, and that that was an advantage obtained by the defendant which should be considered by the jury. The question remarks upon the "important differences" between the settlements as an advantage of the defendant, and upon the price which "had to be paid by the regular licensees under the patents." Comparison of the settlement which the defendant made, with settlements which other people might have made, should not have been admitted,—and this, if not done directly, was at least in an indirect manner brought before the jury.

The above question, read to witnesses, was a compound of positive assertions of facts and conclusions. It is said the question is a hypothetical one, and that in such a question it is allowable to assume facts; but it is not permissible to assume what is not within the range of legitimate evidence. The sum of $1,120,000 as future benefits is a conclusion, which the question figures out by inference from alleged facts. Evidence is to be given only of facts. The inference and conclusion which the question contains a witness would not be admitted to testify to. The hypothetical feature of the question is hardly discernible. The question

covers some two and a half pages, containing in it no appearance of hypothesis, until in the last sentence, in the words, "on this supposed state of facts." The reading over of this lengthy paper, filled with partial statements of facts, containing conclusions drawn from them, many times in the hearing of the jury, was calculated to possess them most fully with the plaintiff's side of the case, and not leave their minds open to an unbiased consideration of the whole of the facts of the case. Opportunity should not be given for doing this, through the medium of a question put to witnesses. The question is an anomaly, and must receive condemnation.

For the errors indicated the judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings.      *Judgment reversed.*

Scott, Ch. J., and Walker, J. : We do not concur in this opinion.

Mr. Justice Dickey took no part in the decision.