**Della S. Hofing, et al., Plaintiffs, v. Howard Willis, et al., Defendants.**
**C. G. Colburn, Petitioner-Appellee, v. Kenneth L. Bast, et al., Objectors-Appellants.**

Gen. No. 10,838.

Fourth District.

June 26, 1967.

Graham and Graham, of Springfield (Hugh J. Graham, III, of counsel), for appellants.

B. G. Colburn, of Jacksonville, for appellee.

HOFFMAN, J.
This appeal is brought to reverse an order fixing attorney's fees.

 

Mr. C. G. Colburn is a licensed attorney who has engaged in the general practice of the law in the city of Virginia since 1932. In 1961 he was contacted by 21 persons, ultimately the plaintiffs in the original cause, to determine what rights, if any, they possessed in 200 acres of farmland. Their interest depended upon the interpretation of two deeds, executed in 1904, and raised difficult points of law involving alternative contingent remainders. At the time Colburn was approached by plaintiffs, Howard and Mary Willis, the ultimate defendants, claimed the entire fee as devisees under an ancestor's will.

In October, 1961, Colburn, on behalf of his 21 clients, filed a suit against the Willises to quiet title and construe the deeds, and demanded partition plus an accounting of the rents and profits from the date of defendant's inheritance. To sustain a position for plaintiffs Colburn had to overturn the rule of Drury v. Drury, 271 Ill 336, 111 NE 140, which asserted a rigid rule of construction that had stood in the law of Illinois for nearly 50 years. In the trial court Colburn was partially successful. He then appealed to the Supreme Court, and in the original case, reported as Hofing v. Willis, 31 Ill2d 365, 201 NE 2d 852, he succeeded in changing the Drury rule and secured a ruling awarding plaintiffs $15\frac{1}{16}$ths of the acreage involved.

Colburn then followed through on the partition sale. The real estate sold for $155,600, of which plaintiffs' share was $145,875. In addition, plaintiffs were entitled to rents which had accrued in the sum of almost $25,000.

At the time Colburn was first approached by plaintiffs, a contract for his services was entered into. It is this contract which raises the dispute in this case as to Colburn's fee. By the contract Colburn was hired to represent the plaintiffs "in an attempt to establish, prosecute and handle their respective claim and establish their rights

of inheritance, if any, . . ." It was agreed that Colburn "has made no guarantee regarding the successful termination of said suit . . ." The plaintiffs agreed to pay court costs and expenses, to pay Colburn a retainer of $500 upon the execution of the agreement, and:

> "The said parties of the first part agree to pay to the party of the second part for all services rendered after the execution of this contract a reasonable, fair and customary fee based upon the recommended fees and charges as set forth in the schedule of fees of the Bar Association of Menard County, Illinois, upon the final completion of said suit, litigation or other legal means that in his opinion and judgment may be necessary by said second party in the matters involved herein."

At the hearing to determine attorney's fees, Colburn asked for one-third of the sale price (not including the rents) which was a fee of $48,625. He was supported in this view by two attorneys who had practiced extensively in the Circuit and who testified to their familiarity with the case and with the work involved. Several of the plaintiffs, who had been represented by Colburn, objected to this fee. However, they introduced no evidence or opinion concerning what the fee should be, and left the computation of it up to the court. The court considered the matter at length, analyzed its many aspects, studiously examined the manual of fees, and, in an opinion covering five pages of the abstract, concluded that the fee should be the amount asked for. From the order fixing this amount the several objecting plaintiffs have taken this appeal.

The schedule of fees of the Bar Association of Menard County provides that general office work shall be charged at the rate of $25 per hour. For contingent fees the schedule provides 33⅓rd percent of the amount of recovery in the trial court, and 40% upon appeal.

In his testimony at the fee hearing Colburn stated that he worked approximately 100 days on this case. He argued that the contract called for a contingent fee, but did not ask for the 40% because of the appeal, and claimed no part of the rents which had accrued. The objectors say that the contract does not provide for a contingent fee but merely authorized a fee computed on an hourly basis. Arguing from this they state that if Colburn worked eight hours per day at the rate of $25 per hour for 100 days, the reasonable charge would be $20,000. It is interesting to note that they do not suggest that they would have been willing to pay this amount had Colburn lost the case.

The court, in its analysis, concluded that the contract called for a contingent fee. But the court also, upon reasoning founded on Canon 12 of the American Bar Association (later discussed) justified the fee which was fixed, apart from the contingent basis.

The contract between Colburn and his clients provides that the fee be based upon the schedule of fees of the Bar Association of Menard County. The parties to this appeal have agreed that the Menard County Bar has adopted the Illinois State Bar schedule of fees. The Illinois State Bar minimum fee schedule, in effect at the time, adopted Canon 12 of the American Bar Association Canons of Professional Ethics, and the State Bar Association has announced that Canon 12 "should remain foremost at all times in the mind of the attorney as he sets fees for his services."

Canon 12 provides, in part, as follows:

"In determining the amount of the fee, it is proper to consider:

"(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

387

"(2) whether the acceptance of employment in the particular case . . . will involve the loss of other employment while employed in the particular case . . . ;

"(3) the customary charges of the Bar for similar services;

"(4) the amount involved in the controversy and the benefits resulting to the client from the services;

"(5) the contingency or the certainty of the compensation."

Beyond this, the Illinois State Bar suggested minimum fee schedule provides that the rates set are "minimum rates and are applicable when no unusual problems are involved." The State Bar schedule further counsels that "where the amount involved in a case is substantial, the attorney assumes more responsibility when he undertakes to handle the matter . . . and for such additional responsibilities, the lawyer is entitled to additional compensation."

We further find that our Supreme Court many years ago spoke of the variety of considerations upon which the value of a lawyer's services should be judged, when the services were of such character that there were no certain charges therefor. In Louisville, N. A. & C. Ry. Co. v. Wallace, 136 Ill 87, 26 NE 493, the court said at page 93:

"The value of legal services will oftentimes depend upon a variety of considerations, such as the skill and standing of the person employed, the nature of the controversy, the character of the questions at issue, the amount or importance of the subject-matter of the suit, the degree of responsibility involved in the management of the cause, the time and labor bestowed. For such services there can be no established market price. There is no fixed stan-

dard by which their value can be determined . . . What is a fair and reasonable compensation for the professional services of a lawyer cannot, in many, if not in most cases, be otherwise ascertained than by the opinions of members of the bar, who have become familiar, by experience and practice, with the character of such services. 'Practicing lawyers occupy the position of experts as to questions of this nature.' "

■■ It is well settled that the awarding of attorney fees is a matter within the discretion of the trial court, and in the absence of a clear abuse of that discretion, the reviewing court will not interfere. Central Standard Life Ins. Co. v. Gardner, 36 Ill App2d 292, 304, 183 NE 2d 881; Norton v. Jordan, 360 Ill 419, 431, 196 NE 475; Golstein v. Handley, 390 Ill 118, 125, 60 NE2d 851.

The trial judge, in his careful analysis of the problem, stated:

"The contract entered into between the parties provides for a $500 retainer fee, the payment of all costs and expenses and a reasonable attorney fee. Although the Contract of Employment does not provide for a contingent fee per se, it is my opinion that the parties so intended and have shown by their conduct that, in fact, Attorney Colburn was to be paid for his services only in the event of a successful determination of the legal proceedings."

The trial judge then went on to say:

"I have also considered Canon 12 in arriving at this decision. In addition to the time and labor involved, I place emphasis on the novelty of the legal questions and the skill of the attorney. Doubtlessly, this employment precluded the attorney from other legal work. Certainly, there can be no doubt about the benefits derived by the parties. At the time the

389

plaintiffs engaged Attorney Colburn, they were not in possession, not collecting rents and, in fact, a will was being probated which would have vested title in defendants. I have considered the contingency of the compensation and that the employment was not for an established and constant client."

We do not need to decide whether or not the contract between Colburn and his clients provided for a contingency fee because, in our judgment, the fee fixed by the trial court was fair, just and proper in this case apart from that question. For five years Attorney Colburn served the plaintiffs as their counsel in a manner which demonstrated professional service of the highest order. This was not a simple matter of partition, quiet title and accounting. Attorney Colburn started with an almost hopeless case, and ended by obtaining a new rule in a branch of the law that is most unchanging.

The objectors have argued that actual time alone (computed at the office rate) should be the sole determining factor in arriving at a fair and reasonable fee. They ignore what Canon 12 and our Supreme Court have said must not be ignored; namely, the results accomplished, the character of the services, the difficulties of the case, the amount involved and the responsibilities assumed.

The trial court heard all the evidence offered and fixed a fee based upon a careful and thoughtful analysis of the many considerations involved. We cannot say that the result manifests an abuse of discretion, nor is it oppressive or exorbitant.

Accordingly, the order appealed from is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.