EDWARD NEVILLE, Plaintiff-Appellee, *v.* ALBERT J. DAVINROY, Defendant-Appellant.

Fifth District   No. 75-331

Opinion filed September 2, 1976.

Dixon, Starnes, Nester, McDonnell & Stegmeyer, of Belleville (Charles H. Stegmeyer, of counsel), for appellant.

Edward Neville, of East St. Louis, for appellee, *pro se.*

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff, Edward Neville, an attorney, brought an action alleging an express oral contract in the circuit court of St. Clair County against his former client, defendant, Albert J. Davinroy, for compensation for legal services rendered at the contractual rate of $35 per hour in ten different matters over a period of approximately four years. The trial court sitting without a jury found that there was "an oral contract for services rendered with no mention of price involved" and that Neville "indicated in his opinion the reasonableness of the fee (of $35 per hour), supported by what existed at that time, the minimum schedule, fee schedule of the State Bar Association." Accordingly, the court entered judgment in favor of Neville in the amount of $6,766.50 and costs of suit, from which judgment Davinroy appeals.

On appeal, Davinroy essentially raised two issues for review. He first contends that Neville failed in satisfying his burden of proving that the employment contracts had been entered into fairly and that the client had been advised fully in regard to his rights and all facts in each matter. Davinroy next contends that the trial court should have applied its own independent judgment in considering the propriety of the attorney fees charged in each case.

At trial Neville testified that in each case contracts for representation were entered into orally; that for each separate matter the attorney and his client had agreed upon an hourly fee of $35; and that he informed Davinroy of what each case might entail in terms of time and effort. In one instance, Neville stated that he had to dissuade Davinroy from

pursuing a matter on appeal which would not and could not be successful. Neville, by his business records kept in the ordinary course of business, showed that he had spent 198.25 hours on behalf of Davinroy (approximately ten hours more than had been originally alleged in the complaint). Parenthetically, it should be noted that we are unable from this record to determine how the amount allowed of $6,766.50 was determined, however, Davinroy does not challenge the total amount but complains that the fees allowed were unreasonable and not supported by the independent judgment of the court. Neville introduced into evidence copies of two written bills covering the two earliest matters at issue, which he purportedly caused to be sent to Davinroy and which were unacknowledged and not paid. He testified that he orally told Davinroy of the fees involved in the other cases, even though it was his usual custom to send written bills when a legal problem was resolved. Neville further testified that he kept Davinroy orally informed of the developments in all the matters involved. The business records introduced by the attorney show conferences with the client throughout the more involved matters and short meetings and telephone contact between attorney and client throughout many of the lesser matters. Neville and Davinroy had been friends and had mixed socially for over 20 years and were business partners in an apartment building. Neville had filed a partition proceeding with reference to that property at the time of the commencement of the case at bar.

Davinroy testified that he was not aware that Neville was acting as an attorney on his behalf in some of the matters in question; that fees were never discussed by the parties; and that he never received a written bill in regard to any matter. Davinroy's evidence does not indicate any reason why Neville would perform those services that Davinroy acknowledged, and not charge any fee whatsoever. However, Davinroy's theory on appeal, as it was in the court below, is that he and Neville had an attorney-client relationship in each of the matters and that as such, Neville owed him a fiduciary duty encompassing a duty to disclose, before, during, and after a service was rendered, the possible nature and extent of the proposed service as well as the possible expense, the status of the work as it was performed, and a specification of the hours worked and results accomplished after it was completed. Essentially, Davinroy's argument revolves around Neville's admitted failure to send his client bills throughout most of the period in question, which would have informed the client of the hours of service performed and the charge therefor. Only two bills had been sent by the attorney although he represented Davinroy for over four years on ten different matters. Moreover, one of those bills, charging $25 per hour, contained, by Neville's testimony, a "mistaken" recitation of the hourly charge agreed upon. Neville's explanation for not

sending bills in a timely manner was that Davinroy had not paid the first two bills and that it was therefore useless to send any more. He testified that he orally informed Davinroy of the hours expended in his behalf. This assertion was denied by Davinroy.

■■ The law places special obligations upon an attorney by virtue of the relationship between attorney and client. Those obligations are summed up and referred to generally as the fiduciary duty of the attorney. They permeate all phases of the relationship, including the contract for payment. There can be no question that an attorney's duty to his client includes that of not taking advantage of a client's trust. An attorney must also inform his client of all material facts affecting his employment. As the court stated in *Warner v. Basten*, 118 Ill. App. 2d 419, 432, 255 N.E.2d 72, 79:

> "Certainly the conduct of the attorney should be beyond suspicion and there must be a full and fair disclosure made to the client."

The protection of the client is so important that all transactions between attorney and client are subject to the closest scrutiny and where an attorney's fiduciary duty comes into play, the attorney has the burden of showing fairness, good faith, adequacy of consideration and freedom from undue influence. *Drake v. Becker*, 14 Ill. App. 3d 690, 303 N.E.2d 212; *Miller v. Solomon*, 49 Ill. App. 2d 156, 199 N.E.2d 660; *Turner v. Black*, 19 Ill. 2d 296, 166 N.E.2d 588; *Gaffney v. Harmon*, 405 Ill. 273, 90 N.E.2d 785; *Goranson v. Solomonson*, 304 Ill. App. 80, 25 N.E.2d 930; *Morrison v. Smith*, 130 Ill. 304; but see *Sokol v. Mortimer*, 81 Ill. App. 2d 55, 225 N.E.2d 496.

Neville's failure to bill his client in a timely manner could have had the effect of misleading Davinroy. Questions that may have been raised concerning the quantity or quality of a service rendered or the charge therefor could have been appropriately settled before new legal matters had arisen. In short, Neville's practice could have deprived Davinroy of a full appreciation of the cost and utility of the legal services he sought from his attorney. Neville's conduct was not beyond suspicion but instead, casts an appearance of a breach of fiduciary duty which adversely reflects upon the legal profession. For these reasons this conduct is not to be condoned. However the question of an attorney's conduct under the attendant circumstances is one of fact. The question which this appeal presents is whether the trial court erred in finding that Neville had not breached his fiduciary duty and was therefore entitled to recover.

■■ The trial court found that:

> "We have no bills sent out, the fact that they weren't sent out doesn't effect the binding nature of contract * * *."

After a careful review of the record, we cannot say that the trial court erred in its findings. The record shows that over a period of four years

Davinroy sought Neville's services on ten separate matters of varying complexity. Neville testified to the effect that he had always kept his client fully informed about the scope and extent of the activity being expended in Davinroy's behalf and of the current developments in each particular case. There emerges from the record in this case a pattern or course of dealings between two former social friends who were also business partners. Neville introduced evidence indicating numerous attorney-client conferences and telephone calls. There was ample evidence of close contact and communication from which the trial court could have concluded that Davinroy was fully aware of the labor performed in his behalf. Davinroy's testimony denying that in some instances he was aware that Neville had taken any action in his behalf, presented a conflict in testimony for the trier of fact to resolve. The trial court after seeing and hearing the witnesses and viewing the evidence chose to believe Neville's testimony. We are not here concerned with the contractual rate of $35 per hour purportedly agreed upon. Neville testified that prior to representing Davinroy in each and every matter, the attorney and client specifically orally agreed to that rate of compensation. Davinroy denied this. The trial court realistically did not believe the testimony of Neville in this aspect. However, the attorney had met his burden of showing that despite his failure to bill his client in a timely manner he had nonetheless not misled his client but had dealt with him fairly and had given him an appreciation of the time and effort expended in his behalf.

Davinroy next contends that the trial court did not have a proper basis to make its determination of $35 per hour as a reasonable fee and that the court erred in not applying its own independent judgment in this regard.

■■■ If an attorney renders professional services he has a right to be compensated for such services. (Ill. Rev. Stat. 1975, ch. 13, par. 1; *In re Estate of Bort*, 75 Ill. App. 2d 322, 221 N.E.2d 24.) It is clear that where a client and his attorney enter into an express contract for representation, the express contract will control the compensation due the attorney. Where an express contract is not entered into, there is generally an implied promise to pay a reasonable compensation for the services rendered by the attorney under *quantum meruit*. Neville, in his complaint, alleged an express oral contract for fees. The trial court, however, found "an oral contract for services rendered with no mention of price involved." The court also found that there was "unrebutted evidence of labors having been done." In Illinois, a plaintiff may recover under *quantum meruit* on a claim made under an express contract without amendment of the pleadings, where the plaintiff fails to establish the express contract but does show that in fact services were rendered. (*Nardi & Co. v. Allabastro*, 20 Ill. App. 3d 323, 314 N.E.2d 367; *Moreen v.*

*Estate of Carlson,* 365 Ill. 482, 6 N.E.2d 871; *Anderson v. Biesman & Carrick Co.,* 287 Ill. App. 507, 4 N.E.2d 639; *People's Casualty Claim Adjustment Co. v. Darrow,* 172 Ill. 62, 49 N.E. 1005.) *Quantum meruit* literally means "as much as he deserved." An attorney recovering thereunder compensation for services rendered is entitled to receive the reasonable worth or value of his services as shown by the evidence. (*In re Estate of Bort,* 75 Ill. App. 2d 322, 221 N.E.2d 24; *Sullivan v. Fawver,* 58 Ill. App. 2d 37, 206 N.E.2d 492; *People's Casualty Claim Adjustment Co. v. Darrow,* 172 Ill. 62, 49 N.E. 1005.) In the allowance of attorney's fees, courts may exercise their independent judgment and the amount thereof rests in their sound discretion. (*Richheimer v. Richheimer,* 59 Ill. App. 2d 354, 208 N.E.2d 346; *Hofing v. Willis,* 83 Ill. App. 2d 384, 227 N.E.2d 797.) The factors to be considered in determining the reasonable value of the service are: the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. *Hofing v. Willis,* 83 Ill. App. 2d 384, 227 N.E.2d 797; *Sullivan v. Fawver,* 58 Ill. App. 2d 37, 206 N.E.2d 492; *Mueller v. Sloan,* 33 Ill. App. 2d 205, 178 N.E.2d 135; *Louisville, New Albany & Chicago Ry. Co. v. Wallace,* 136 Ill. 87, 26 N.E. 493.

In the case at bar the only evidence concerning the value of Neville's services to Davinroy related to the amount of time expended by Neville. On this basis Neville stated his opinion that the fees he sought were reasonable. Neville also asked the court to take judicial notice of the minimum fee schedules of the Illinois State Bar Association.

■■ In light of the recent trends regarding attorney fees the use of minimum fee schedules is not approved by this court. Moreover, evidence of the amount of time actually expended by Neville in each individual matter should not have been the sole determining factor of the value of the services he rendered to Davinroy. (*Hofing v. Willis,* 83 Ill. App. 2d 384, 227 N.E.2d 797.) Since consideration was not given to the character of each case, the difficulty of the questions presented, the responsibilities assumed and the results accomplished in each matter, the judgment of the trial court was without a proper basis. We therefore reverse the judgment of the circuit court of St. Clair County and remand this case so that the reasonable value of Neville's services may be determined in a manner consistent with the foregoing.

Reversed and remanded with directions.

CARTER and JONES, JJ., concur.