HOWARD R. SLATER *et al.*, d/b/a Slater & Kahan, Plaintiffs-Appellees, *v.* DR. RAYMOND L. JACOBS, Defendant-Appellant.

First District (2nd Division)    No. 76-1097

Opinion filed December 27, 1977.

Gerard C. Heldrich, Jr., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Paul E. Slater, of Chicago (Richard A. Seltzer, of counsel), for appellees.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

Howard R. Slater and Donald A. Kahan, d/b/a Slater and Kahan, attorneys at law, brought a five-count second amended complaint against defendants, Dr. Raymond L. Jacobs, Dr. Robert Wurman, and Fullerton-Ashland Medical Center, Ltd., to recover attorneys' fees for services rendered to defendants.

In his answer, defendant Dr. Jacobs denied the material allegations of count I. Dr. Jacobs counterclaimed against plaintiff Slater, alleging that he and Slater entered into an oral contract wherein Slater would charge him on a time-incurred basis, at an hourly rate customarily charged by attorneys in the Chicago, Illinois, area for similar services; that $5,000 was paid to Slater as an advance against time incurred by Slater; that Slater refused to furnish him with a statement of time incurred on his behalf; that he believed that Slater had overcharged him to the extent of $2,500.

The jury returned a verdict in favor of plaintiffs on count I in the sum of $12,500 and in favor of plaintiff on defendant's counterclaim. Judgment was entered on the verdict and defendant's post-trial motion was denied.

Defendant Dr. Jacobs appeals from the judgment and denial of his post-trial motion, contending, *inter alia*, that the jury's verdict was excessive and contrary to the manifest weight of the evidence.

At trial, plaintiff Slater testified that plaintiffs had, prior to the subject matter of this litigation, done other legal work for defendant Dr. Jacobs. Statements would be sent when the work was completed, and all fees were paid.

Slater testified that for approximately 1½ years prior to the institution of Dr. Wuman's lawsuit in the summer or fall of 1971, he had numerous telephone conversations and meetings with Dr. Jacobs regarding certain disputes between the physicians. He also had conferences with Dr. Wurman's attorneys. He told Dr. Jacobs that there would be no fees until the matter was resolved.

After the suit was filed, Dr. Jacobs called Slater, asked him to defend him, and then went to plaintiffs' office for a conference. The action sought dissolution of the partnership and partition of the real estate upon which they conducted their practice, which real estate was in a land trust.

In defense of the suit that had been filed against the defendant, Slater did research, prepared pleadings, attended six or seven sessions of Dr. Wurman's deposition, and had settlement conferences with Dr. Wurman's attorneys. At Slater's direction, Dr. Jacobs began negotiating directly with Dr. Wurman.

In the summer of 1972, a settlement was reached, and the action was dismissed with prejudice. Slater participated in the drafting and review of the documents necessary for incorporation, and was "fully paid" for these services.

Slater testified that on November 2, 1972, the night before final settlement papers were signed, he told Dr. Jacobs that he was entitled to a $20,000 fee. Plaintiffs had broken down the legal services into two bills, one to a corporation that defendant was involved with for $7,500 and one to Dr. Jacobs for $12,500. The bill for $12,500 was exclusive of the $5,000 that was originally paid to Slater.

Defendant Jacobs testified that the highest figure Slater gave him at the initial conference was $15,000. He stated that at a conference the following day, Slater gave him a figure of $50 per hour for office time, and $75 per hour for court time, and that he would get a credit for the $5,000 advance against time incurred in defense of the suit.

■■ We commence our consideration of the issues herein with the undisputed principle that an attorney who renders professional services has a right to be compensated for such services. (Ill. Rev. Stat. 1975, ch. 13, par. 1; *In re Estate of Bort* (1st Dist. 1966), 75 Ill. App. 2d 322, 221 N.E.2d 24.) Where a client and his attorney enter into an express contract for representation, the express contract will control the compensation due the attorney. Where an express contract is not entered into, there is generally an implied promise to pay a reasonable compensation for the services rendered by the attorney under *quantum meruit. Neville v. Davinroy* (5th Dist. 1976), 41 Ill. App. 3d 706, 710, 355 N.E.2d 86.

■■ In Illinois, a plaintiff may recover under *quantum meruit* on a claim made under an express contract without amendment of the pleadings, where the plaintiff fails to establish the express contract but does show that in fact services were rendered. (*Moreen v. Estate of Carlson* (1937), 365 Ill. 482, 6 N.E.2d 871; *People's Casualty Claim Adjustment Co. v. Darrow* (1898), 172 Ill. 62, 49 N.E. 1005; *Neville; Nardi & Co. v. Allabastro* (1st Dist. 1974), 20 Ill. App. 3d 323, 314 N.E.2d 367; *Anderson v. Biesman & Carrick Co.* (1st Dist. 1936), 287 Ill. App. 507, 4 N.E.2d 639.) *Quantum meruit* literally means "as much as he deserved." An attorney recovering thereunder compensation for services rendered is entitled to receive the reasonable worth or value of his services as shown by the evidence. *Darrow; Neville; In re Estate of Bort; Sullivan v. Fawver* (2d Dist. 1965), 58 Ill. App. 2d 37, 206 N.E.2d 492.

In the case at bar, it is to be noted that the complaint alleges in paragraph two of count I that the defendant retained the services of the plaintiff to represent him but concludes in paragraph six "* * * the reasonable value of the services rendered * * *" by the plaintiffs to the defendant was not less than $20,000, and after applying the retainer of $5,000, there is a balance due and owing plaintiffs in the amount of $15,000.

■■ Our courts have long held that the factors to be considered in determining the reasonable value of the services are: the skill and standing

of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. *Louisville, New Albany & Chicago Ry. Co. v. Wallace* (1891), 136 Ill. 87, 26 N.E. 493; *Neville; Hofing v. Willis* (4th Dist. 1967), 83 Ill. App. 2d 384, 227 N.E.2d 797; *Sullivan; Mueller v. Sloan* (1st Dist. 1961), 33 Ill. App. 2d 205, 178 N.E.2d 135.

The trial court took into consideration the following pertinent provisions of Canon 12 of the American Bar Association Canons of Professional Ethics in instructing the jury in this case:

"In determining the amount of the fee, it is proper to consider:

(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

\* \* \*

(3) the customary charges of the Bar for similar services;
(4) the amount involved in the controversy and the benefits resulting to the client from the services; \* \* \*."

We observe the fact that this Canon was never formally adopted as a rule of court by our supreme court.

■■ Moreover, our supreme court has stated that "although this court has not formally approved the Code of Professional Responsibility adopted by the American Bar Association, it frequently serves as a guide for standards of professional conduct." (*In re Spencer* (1977), 68 Ill. 2d 496, 370 N.E.2d 210.) In this regard, we note the following pertinent provisions of Disciplinary Rule 2—106 of the Code of Professional Responsibility, adopted by the American Bar Association on August 12, 1969, and adopted by the Illinois State Bar Association and the Chicago Bar Association on May 1, 1970:

"\* \* \* Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

\* \* \*

(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;

\* \* \*

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; * * *."

Very recently, in a matter involving the determination of a reasonable fee for an attorney-personal representative, the court in *In re Estate of Hackett* (4th Dist. 1977), 51 Ill. App. 3d 474, 478, 366 N.E.2d 1103, noted that:

"* * * In passing upon the reasonableness of court-determined attorneys' fees in other types of cases, the supreme court has recently indicated that greater importance should be given to the time expended as shown by a detailed time record. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897.)"

In the *Leader* case, which dealt with the determination of attorneys' fees in a class action suit, our supreme court, referring to its prior opinion in *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1, stated as follows:

"In *Flynn* we departed from the percentage of the recovery approach and emphasized that substantial consideration must be given in fixing fees to the amount of time expended by the attorneys. This, of course, does not mean that time expended is the sole criterion, nor will it assume the same degree of importance in every case. It should, however, be considered as the starting point or the basis upon which the fees are computed depending upon the circumstances of each case.* * *

We stated in *Flynn* at page 67, 'In our opinion the time expended in such a case is not to be relegated to a secondary or minor position; it is a highly significant factor in determining the fee. In this case the attorneys for the plaintiffs did not keep records of the amount of time they spent on this case. This failure to keep records greatly increases the difficulty in determining a proper fee. * * *' " (*Leader v. Cullerton*, 62 Ill. 2d 483, 488-89.)

Also, in *Mueller v. Sloan* (1st Dist. 1961), 33 Ill. App. 2d 205, 207, 178 N.E.2d 135, the court stated:

"* * * Time being the lawyer's sole expendable asset, the economic worth of his ability, training and experience is determined by the use of the hours available for the practice of his profession. * * *"

In the case at bar, plaintiffs testified that they kept no time records. Plaintiff Slater testified that plaintiffs wanted a $5,000 retainer both to compensate plaintiffs for prior consultation and "* * * to constitute compensation for undertaking the obligation" of defense of the litigation. Plaintiffs' second amended complaint applies the full retainer of $5,000 to the $20,000 amount claimed due and owing.

On direct examination, Slater was asked whether he had an opinion as to the amount of time he spent. Defendant's attorney objected on the

grounds "he kept no records. How can he testify to time." Plaintiffs' own attorney then stated "he did not keep accurate time records. That is not the way Mr. Slater worked." In overruling an objection to this question, the trial court stated: "He can take a wild guess." Slater estimated that prior to the filing of Dr. Wurman's lawsuit, he spent 40 hours in counseling Dr. Jacobs; subsequent to the filing of said suit, 100 hours were expended on research, pleadings, six sessions of Dr. Wurman's deposition, and conferences with Dr. Jacobs. He testified that he kept a diary, but that the diary was lost, and that he had no notes or logs of conversations or meetings which he may have had. On cross-examination, Slater recalculated the estimated hours he expended subsequent to the filing of the lawsuit, and stated "It sounds more like 110."

Defendant testified that when he asked plaintiff Slater for time sheets, Slater told him "Don't worry about it." In the latter part of negotiations of the parties, the defendant called the plaintiffs and asked for his bill. Defendant Dr. Jacobs testified that Slater informed him that he wanted another $15,000 and if the bill was not paid he, Slater, would not show up to complete the closing of the settlement. Defendant sent a letter asking for a breakdown of charges, but no response was ever received. Slater also acknowledged telling the defendant prior to the lawsuit that his basic time charges were $60 per hour in the office and that "Ray, you're running up time with us and one of these days there will be a day of reckoning." We conclude that the aforementioned evidence failed to satisfy the requirements set down by our courts regarding the greater importance that should be given to the time expended as shown by detailed time records. *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *In re Estate of Hackett* (4th Dist. 1977), 51 Ill. App. 3d 474, 366 N.E.2d 1103.

In *People v. Atkinson* (2d Dist. 1977), 50 Ill. App. 3d 860, 366 N.E.2d 94, in a special concurring opinion to a case involving fair compensation and attorneys' fees for defense of an indigent defendant by appointed counsel, Mr. Justice Guild commented that the practice of law is, and hopefully always would be, a profession, and that while the case was being reversed for re-assessment of fees, the trial court should remember that we, as lawyers, are engaged in an ancient and honorable profession. In addition, Canon 12 of the American Bar Association Canons of Professional Ethics clearly enunciates: "In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

Regarding other factors to be considered as set down by our courts in determining the reasonable value of the services, and specificauy concerning the criteria of the skill and standing of the attorney employed, it is to be noted that plaintiff Slater testified that he never handled a partition suit prior to his defense of Dr. Jacobs in the lawsuit prosecuted

by Dr. Wurman and that he spent 10 hours researching the law. *Neville v. Davinroy* (5th Dist. 1976), 41 Ill. App. 3d 706, 355 N.E.2d 86. See also *McKay v. Wilhelm* (1st Dist. 1942), 316 Ill. App. 397, 45 N.E.2d 194, where the court noted one of the considerations in proper fee determination was the high degree of skill shown by the attorney.

In the case at bar, plaintiffs' expert witness testified that the reasonable value of services rendered would range between $11,500 and $16,000, based on the current hourly rate of $60 to $100 per hour. There appears to be nothing novel, unique or extraordinary about the services rendered by plaintiffs which would entitle them to any extraordinary fee per hour. In addition, plaintiffs' expert witness added a figure of $5,000 attributable to the nature of the services, results accomplished and benefits derived.

Regarding the latter consideration of benefits resulting to the client, it is to be noted that the defendant Dr. Jacobs had a major part in the settlement of his own litigation. Thus, plaintiff Slater testified as follows:

> "He [Dr. Jacobs] started negotiating with Dr. Wurman himself. This was done at my specific instance to try to make peace with each other and sit down. I said, 'What you are doing is destructive.'
>
> He did do that and he sat down and talked with Dr. Wurman. I don't know what proceedings took place, but I do know the lawyers, that is Mr. Gatenbey and Mr. Law and myself were instructed by our mutual clients to settle the case and dispose of the entire matter.
>
> We were likewise to now confer with the parties who represented Dr. 'Z'. I was told by Dr. Jacobs that part of the settlement was that Dr. 'Z' would become a partner and pay $100,000.00 for his interest."

It has also been held in our courts that in order to aid a jury in determining the reasonable worth of legal services, proof may be introduced of the prices usually charged for similar services. (*Louisville, New Albany & Chicago Ry. Co. v. Wallace* (1891), 136 Ill. 87, 92, 26 N.E. 493.) However, as our supreme court stated in the *Wallace* case:

> "But in other cases it has been also held, that lawyers may be asked their opinions as to the value of legal services. In *Haish v. Payson*, 107 Ill. 365, which was a suit brought to recover for legal services, this Court said: 'Opinions may be received as to the value of the services.' The admissibility of the opinions of witnesses experienced in such matters for the purpose of showing the value of legal services was recognized by the Supreme Court of the United States in *Forsyth v. Doolittle*, 120 U.S. 73." *Wallace*, at 92.

The opinion of plaintiffs' expert was that the customary rate for an attorney with experience in Cook County would be $60 to $100 per hour. One of defendant's experts agreed that $60 per hour would be customary,

but not $100 per hour; defendant's other expert stated that his firm charged $40 per hour for office time and $50 per hour for court time. Both the plaintiffs' and defendant's expert witnesses testified that they kept time sheets in performing their professional duties.

It has been held that an appellate tribunal is not bound by the expert opinion of others as to what constitutes a reasonable attorneys' fee, and that it can use its own independent judgment in reviewing the propriety of the jury's verdict. (*Gilbert v. Lloyd* (1st Dist. 1912), 170 Ill. App. 436.) The *Gilbert* court concluded that the verdict of a jury as to the value of attorneys' services is subject to review, and that there is no reason to perceive why a reviewing court should not be as free to set aside an oppressive verdict for attorneys fees as it would any other verdict which is contrary to the manifest weight of the competent evidence.

■■ For all of the aforementioned reasons, we conclude that the verdict of the jury in the case at bar awarding plaintiffs the sum of $12,500 in addition to the $5,000 retainer received was excessive and contrary to the manifest weight of the competent evidence. Where an award of damages or attorneys' fees is not supported by the facts in the record and a reviewing court is convinced that it is excessive, the court may order a remittitur (*Clarke v. Rochford* (1st Dist. 1967), 79 Ill. App. 2d 336, 224 N.E.2d 679; *Gemmill v. Springer* (1st Dist. 1909), 151 Ill. App. 548.) We believe plaintiffs' evidence, at the most, supports a $9,000 total fee for plaintiffs, based primarily on Slater's testimony that he expended 150 hours, multiplied by the usual and customary fee of $60 per hour. Pursuant to the authority vested in this court by Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a)(5)), we affirm the judgment on the express condition that the plaintiffs enter a remittitur of $8,500 within 30 days from the date of this opinion. Upon the filing of such remittitur, the judgment will be affirmed; otherwise the judgment will be reversed and the case remanded for a new trial. *Clarke; Gemmill.*

Defendant has raised a number of other contentions in this appeal, over and above the question of whether the trial court erred in refusing to order a remittitur, including that the trial court erred in denying his motion for a directed verdict at the close of all the evidence since plaintiffs failed to prove the reasonable value of the services performed and that the trial court erred in instructing the jury that it should consider the usual and customary charges of the Bar for similar services, as evidence of such was not introduced. In view of the conclusion we have reached above in this cause, we do not pass upon these additional contentions.

Judgment affirmed upon the filing of remittitur; otherwise judgment reversed and cause remanded with directions.

DOWNING, P. J., and STAMOS, J., concur.