CAREFREE FOLIAGE, INC., *et al.*, Plaintiffs-Appellees, v. AMERICAN TOURS, INC., *et al.*, Defendants-Appellants.

First District (2nd Division)  No. 86—290

Opinion filed January 13, 1987.

Young & Levin, of Chicago (David M. Levin, of counsel), for appellants.

Robert M. Karton, Ltd., of Chicago (Robert M. Karton, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

The trial court found that plaintiffs, Carefree Foliage, Inc. (Carefree), and Estelle Kriv (Kriv), were liable to defendant, American Tours, Inc. (American), for a promissory note in the amount of $46,084.74. American filed a petition for reasonable attorney fees and expenses. The trial court entered a directed finding in favor of plaintiffs and American now appeals.

On September 14, 1984, Foliage Sales, Inc., an Illinois corporation, now known as Carefree Foliage, Inc., and its president, Estelle Kriv, individually and as president of Foliage Sales, entered into an agreement to purchase assets of Carefree Foliage, Inc., an Illinois corporation, now known as American Tours, Inc. (American). The agreement provided, in pertinent part, for a purchase price of $122,500 plus cost of inventory, as determined by the parties. The contract further provided for a portion of the purchase price to be paid by a negotiable promissory note in the amount of $60,000 executed by Carefree, guaranteed by Kriv, and payable in monthly installments of $2,000 per month plus interest on the outstanding balance at a rate of 12% beginning on November 1, 1980, until the final payment due on October 1, 1982. The note was to be secured by the assets purchased by Carefree. In fact, the contract provided that the collateral pledged would include all machinery, equipment, formulations, and inventory enumerated in the bill of sale and sublease of the business premises.

In June of 1981, Carefree informed American that it would not continue making monthly installments payable under the notice. On

July 2, 1981, American served both Carefree and Kriv with a notice of default requesting that default on the July 1, 1981, installment be cured within five days. On July 21, 1981, after receiving neither the installment payment nor assurance that the payment would be received, American, pursuant to the terms of the security agreement, took possession of the collateral for the purpose of maintaining, preserving, and preparing the same for sale.

On July 24, 1981, Carefree and Kriv filed an action against Carefree Foliage, Inc., and Mark Dalen. The action set forth two counts. Count I alleged fraud in the inducement for certain alleged financial misrepresentations as to income and profits and requested that the purchase agreement dated September 14, 1982, be declared null and void and that any and all obligations of Kriv and Carefree, pursuant to said agreements, be terminated and extinguished. Count I also requested restitution of all sums paid, including the installments paid pursuant to the promissory note.

Count II of the complaint requested a declaratory judgment and other relief, and alleged that Carefree was not in default on the note and that American had illegally declared a default on said note and repossessed the collateral. Count II also requested that the court enjoin American from damaging, selling, liquidating, or in any way disposing of the books, records, assets, inventory, and other property owned by and located on or used in connection with the business operated by Carefree. Lastly, count II requested the permanent abatement of any and all future obligations of plaintiffs to defendants pursuant to the agreement, note, and sublease.

On August 3, 1981, a hearing was held on plaintiffs' request for a preliminary injunction relating to Carefree's count II requested relief. The court entered a preliminary injunction against American prohibiting it from disposing of the collateral other than in the ordinary course of business and further ordered American to make payments to the lessee of Carefree's business premises. The court further ordered that Carefree's obligations to make payment to American pursuant to the terms of the agreement, notice, and sublease "shall abate during such times as [American] exercised possession and control over said business premise owned by [Carefree]." On August 24, 1981, the court entered a further order which provided that the abatements by American of payments of the promissory note and rent payments for the lease of the business premise would remain in force pending further hearing by the court. The court further authorized American, by its agent, Mark Dalen, to liquidate and sell all the assets of the business including but not limited to inventory and machinery in a public

or private sale.

On December 2, 1981, Carefree and Kriv amended their complaint to add two additional counts. Count III requested $100,000 in compensatory damages for American's alleged erroneous default and improper repossession of collateral. Count IV requested $250,000 in damages for libel based on American's publication of a notice of sale of the collateral.

On April 26, 1982, American and Mark Dalen filed their answer and counterclaim against Carefree and Kriv, setting forth three counts. Count I requested payment on the $60,000 promissory note against defendant Carefree and requested monies due plus interest, cost of suit, and attorney fees based upon the note and inventory security agreement. Count II set forth a cause of action against Kriv on the guaranty, plus interest, costs, and attorney fees. Count III sought damages for services rendered by Mark Dalen to Carefree.

On June 24, 1984, the court issued its memorandum opinion and found in favor of American and Mark Dalen and against plaintiffs in count I through count IV of the amended complaint and dismissed the same. The court also found in favor of American on counts I and II of its counterclaim but against defendants on count III. The order further provided for American to present its petition for reasonable attorney fees and expenses incurred in this case by American to collect the monies on the September 30, 1980, note.

On September 24, 1984, American presented its petition for attorney fees and costs in the amount of $46,155. The petition alleged that its attorneys David M. Levin (Levin), Marvin Rosenblum (Rosenblum), and Kathryn Raysses (Raysses) were employed by American and its president, Dalen, and were duly licensed in the State of Illinois. Attached to the petition was a consolidated statement of attorney fees, professional fees, costs, and itemized time records for services performed, prepared upon original time records and pleadings, which set forth the date, services performed, and time of performance. The petition also set forth a detailed description of costs, court reporting fees, and detailed time records for hours expended for professional account services.

On November 8, 1984, American, through its attorneys, filed an amended, verified petition for attorney fees and costs. On December 4, 1984, Carefree and Kriv filed an unverified response to the attorney fees and costs petition and the amendment which denied paragraph 6 of the original petition listing Levin's hours expended on the case and neither admitted nor denied all other allegations.

On September 11, 1985, a hearing was commenced on American's

petition for attorney fees and costs. Rosenblum testified as to services performed on behalf of American and Mark Dalen. Rosenblum also stated that he was a licensed attorney in the State of Illinois; that he consulted with Levin on the instant case; that his hourly rate was $100 per hour; and that he had reviewed his time records before turning them over to Levin in preparation of the instant petition.

David M. Levin testified that he was a licensed attorney in the State of Illinois. He testified that he was hired in July of 1981 and that he immediately started a record of his hours expended on American's case. Levin also testified that he worked on all phases of the case, from a hearing on the preliminary injunction to the trial. Exhibit 4, containing client time sheets, was admitted into evidence. Levin stated that he used the time records contained in Exhibit 4 to prepare the petition. He testified that he used his correspondence file, pleadings, and other documents to detail in the petition the services performed on specific dates. Levin also testified that the time records listed the client's name, services performed, attorney, date of services, and time expended. He stated that the records were prepared on the day the work was completed and that the total time expended was 324 hours. These fees were earned between July 1, 1981, and March of 1984. The billing rate was $80 per hour in 1981, $90 per hour in 1982 and $100 per hour in 1983. Levin testified that contract litigation constituted 80% of his practice and that he had been involved in 100 to 200 trial cases since 1981.

Exhibit 5, detailing court reporting fees, was admitted into evidence. The exhibit contained the original invoices for court reporting fees. Levin testified that each invoice listed was an expense incurred during preparation of American's case.

Raysses testified that she was licensed to practice law in the State of Illinois; that she worked for Levin, initially, as a law clerk and that her duties on this case included work on discovery matters, research, writing and assisting in drafting pleadings for American's case. She testified that her time records were included in Exhibit 4; that at the end of each day she listed the client, work performed, and time spent on her time sheet. She reviewed and examined each and every entry in those time records before they were admitted into evidence at trial.

Dr. James R. Adler (Adler) testified that his accounting firm, Checkers, Simon and Rosner (CSR), was hired by Levin for the case of *Carefree Foliage, Inc. v. American Tours, Inc.* Adler testified that he was a C.P.A. and had a Ph.D. in accounting, statistics, and operations research. He also stated that the balance of work was performed

under his direction by several of his employees. Adler identified Exhibit 1 as a computerized time record of his work and his employees' work. Adler further stated that he had reviewed each and every entry and that they were accurate. He testified that the total number of hours earned between October of 1982 and March of 1984 were 91.6. Various hourly rates were charged for these services. Adler identified Exhibit 2 as a summary and analysis of the documents (invoices) admitted into evidence as part of Exhibit 1. Exhibit 2 listed the hourly rate of each employee at the time the service was performed. These CSR employees, Karen Kenowski, Gary Drauzas, and Thomas Dwyer, all testified that the computer readouts accurately recorded the time spent working on the American case.

After the presentation of petitioners' evidence, the court denied Carefree's motion for a directed finding, ruling that a *prima facie* case had been set forth by American and Dalen. Carefree's counsel then requested, and was granted, an opportunity to present additional arguments the following day. After that argument, the court ruled that "the evidence produced in this case does not tell what time was spent in the collection of the note" and that "you are only entitled to reasonable attorney fees in the collection of the note."

The only issue before this court is the trial court's directed verdict against American and Dalen denying their petition for attorney fees and costs in the amount of $46,155. Apparently, the trial court ruled that American is only entitled to fees and costs solely for the collection of the note and not for the defense of plaintiffs' suit. The plaintiffs' suit alleged that American and Dalen had illegally defaulted on the note, improperly repossessed the collateral, and committed libel. The suit sought the remedies of rescission and damages. The trial court erred in granting plaintiffs' requested directed verdict.

Plaintiffs rely primarily on *Kaiser v. Olson* (1981), 105 Ill. App. 3d 1008, 435 N.E.2d 113, and *Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 425 N.E.2d 1344. Yet, the facts in these two cases are inapposite. In *Kaiser*, the court held that a contractual provision authorizing fees for the "collection" of a note did not authorize fees for collateral legal work such as defending against the borrower's counterclaims. The facts in the instant case are very different. Here, the note provided in pertinent part, that:

> "if the same is placed in the hands of an attorney for collection of suit filed thereon *** or other legal or judicial proceeding for the collection herein, the undersigned agrees to pay reasonable attorneys' fees to the payee's attorney."

Attached to the promissory note was Kriv's guarantee. The guaranty provided, in pertinent part:

"The undersigned further agrees to pay *all expenses* (including reasonable attorneys' fees and expenses) paid or incurred by the payee in endeavoring to *collect the liabilities* or any part thereof and in *enforcing this guaranty*." (Emphasis added.)

Pursuant to said contract, the parties further entered into a security agreement which pledged Carefree's equipment, fixtures, and lease and an inventory security agreement. The inventory security agreement provided, in paragraph 12, that:

"[u]pon Debtor's default under the terms of this agreement or note *** (t)he Debtor will pay the Secured Party on demand, any and *all expenses* including legal expenses and reasonable attorneys' fees incurred or paid by Secured Party in *protecting and enforcing liabilities and the rights of Secured Party hereunder*, including Secured Party's right to take possession of inventory and its proceeds and to hold, prepare for sale, sell and dispose of such inventory." (Emphasis added.)

The provisions for awarding attorney fees in these agreements are broader than the agreement in *Kaiser*. These provisions call for recovery of fees for all expenses in both the "collection" and the "enforcement" of the note, guaranty, and inventory security agreement. (*Exchange National Bank v. Daniels* (7th Cir. 1985), 763 F.2d 286.) In *Daniels*, the court allowed recovery of attorney fees, including those incurred from defending counterclaims, by plaintiff on his action for default of defendant's note where note allowed attorney fees or "collection" and "enforcement" of the note, rather than mere "collection" of the proceeds. In distinguishing *Kaiser*, the court in *Daniels* noted that the maker's counterclaims—"alleging among other things that the bank's employees fraudulently induced them to enter into the note and guaranty—were integral to the 'enforcement' of the note, and that the other litigation commenced by the (Maker) was designed to frustrate the enforcement of the note." 763 F.2d 286, 294.

It is clear that Carefree's suit against American alleged causes of action integral to the enforcement of the note and guaranty. Carefree's first count alleged fraud in the inducement due to financial misrepresentations. This cause of action, based on fraud, is substantially similar to the maker's counterclaim in *Daniels*. Moreover, count I calls for restitution and a declaration that the purchase agreement be declared null and void. American would have to challenge this lawsuit in order to recover on its note. In addition, count II requests permanent abatement of future obligations under the agreement, note, and

sublease. While Carefree later amended its complaint to include a request for damages and a libel count, it is clear that the real objective of the lawsuit was to rescind the underlying transaction in an attempt to avoid further payments on the note or guaranty.

■■ Given the timing of the suit, it is evident that plaintiffs' lawsuit was commenced to frustrate American's "enforcement" of the note. In June of 1981, plaintiffs informed American that they would cease payments of the note. On July 1, 1981, American requested plaintiffs make payment on the defaulted note. Having received neither assurance nor payment, American took possession of the collateral on July 21, 1981. Three days later, plaintiffs filed suit. Thus, it is evident that plaintiffs' suit was brought to frustrate American's enforcement of the note. As such, we rule that defendants-petitioners may recover attorney fees for defending plaintiffs' suit. *Duryea v. Third Northwestern National Bank* (8th Cir. 1979), 606 F.2d 823.

*Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 425 N.E.2d 1344, is not applicable here. In *Verni*, a condominium association brought an action for forcible entry and detainer for refusal of a condominium owner to pay his condominium assessment. While the forcible detainer action was pending, the unit owner brought suit against the condominium association and its officers to enjoin the forcible detainer action and to examine the books and records of the association. In denying the association its requested attorney fees for the defense of the unit owner's complaint to compel disclosure of the books and records, the court explained that the owner's complaint was a separate and distinct action from the association's suit for forcible detainer. Moreover, the court noted that the statute, providing the basis for recovering attorney fees, did not have a provision allowing attorney fees to be recovered for any action other than forcible detainer. (99 Ill. App. 3d 1062, 1065-66, 425 N.E.2d 1344.) As noted above, plaintiffs' suit was directly related to American's action to seek enforcement of the note, guaranty, and inventory security agreement. Therefore, *Verni* is clearly distinguishable.

■■ The plaintiffs next attack the reasonableness of the amount of the attorney fees and costs. If an attorney renders professional services, he has a right to be compensated for such services. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 710, 355 N.E.2d 86.) Even under *quantum meruit*, an attorney is entitled to receive compensation for the reasonable value of his services as shown by the evidence. (41 Ill. App. 3d 706, 711, 355 N.E.2d 86.) The factors to be considered in determining the reasonable value of the service are: the skill and

standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. 41 Ill. App. 3d 706, 711, 335 N.E.2d 86.

■ The trial judge granted plaintiffs' motion for a directed verdict at the end of petitioners' hearing on attorney fees. It is well settled that a directed verdict should be entered only in those cases in which all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) We find that the trial court erred in entering a directed verdict.

In making his findings, the trial judge merely stated that, "you are only entitled to reasonable attorney fees in the collection of the note." The trial court failed to apply any standard to measure the reasonableness of attorney fees and costs. In short, the trial court failed to exercise any discretion in determining whether petitioners' submitted request was reasonable. Moreover, petitioners presented testimony by all those individuals seeking compensation in the form of fees or costs. These individuals testified that the exhibits introduced to summarize the fees earned or costs incurred were accurate. The exhibits detailed the dates, times, descriptions of work completed by defendants and others claiming fees. Yet, the trial judge, in entering a directed verdict against petitioners, failed to comment on the weight of the evidence or the credibility of the witnesses or the documents presented.

■ We find the petition and subsequent hearing produced sufficient evidence to support petitioner's request for court costs and professional fees in the amount of $12,080.05. We also find that the evidence established petitioner's entitlement to reasonable attorney fees for the entire litigation. Therefore, we reverse and remand this case with directions to the trial court for a determination of the amount of reasonable attorney fees.

Reversed and remanded with directions.

HARTMAN and BILANDIC, JJ., concur.